Argued July 14, reversed September 14, 1960

# FISHER *v.* RUDIE WILHELM WAREHOUSE CO.

355 P. 2d 242

*Duane Vergeer,* Portland, argued the cause for appellant. On the brief were Vergeer & Samuels and Charles S. Crookham, Portland.

*Burl L. Green,* Portland, argued the cause for respondent. On the brief were Donald S. Richardson, Philip A. Levin and Green, Richardson, Green & Griswold, Portland.

Before McAllister, Chief Justice, and Warner, O'Connell, Goodwin and Millard, Justices.

GOODWIN, J.

The defendant, Wilhelm, appeals from the circuit court's failure to invoke the "joint supervision and control" exclusion which limits certain employees covered by the Workmen's Compensation Act, ORS ch 656, to their benefits under the Act and deprives them of the right in certain cases to bring an action against a negligent third party who is also covered by the Act.

The circuit court ruled in a preliminary proceeding that Fisher, the plaintiff, was not barred by ORS 656.154 from seeking damages for injuries sustained December 2, 1954. The sole question is whether the judge who ruled initially that the action would lie correctly applied the statute as it was then written to the facts of this case.

The statute, before its 1959 amendment, provided as follows:

ORS 656.154. "(1) If the injury to a workman is due to the negligence or wrong of a third person

not in the same employ, the injured workman, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.002 to 656.590.

"(2) As used in this section, 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation."

Each case to which the above-quoted statute is sought to be applied requires the trial court, on supplemental pleadings, to analyze the facts in order to decide whether the plaintiff is barred by the statute. In *Nelson v. Bartley,* 222 Or 361, 352 P2d 1083, Mr. Justice Rossman reviewed the numerous Oregon decisions which have construed the statute. The facts in the instant case, for the most part, are not disputed.

Fisher was employed as a structural steel worker and foreman by Portland Wire and Iron Company, a covered employer under the Workmen's Compensation Act. Wilhelm also was a covered employer under the same act.

Fisher's duties required him to supervise at least a part of the construction of the steel framework of a large shopping center being built by a general contractor who is not involved in this case. Fisher's duties included the receiving of structural steel from his employer's stockpiles, and the general direction

of its unloading, sorting, and ultimate installation in the framework of the building.

Wilhelm, an independent contractor, had been engaged by Fisher's employer to store, and when called upon to do so, to deliver such items of structural steel as might be required on the job. Wilhelm furnished, in addition to the necessary trucks, a truck-mounted crane, and drivers and operators for such machines. Fisher's employer, on the day in question, gave no directions to Wilhelm other than to deliver to the job site such steel items as Fisher's employer needed for the work.

On December 2, 1954, Fisher had received general instructions to receive two loads of steel to be delivered by Wilhelm. He was accompanied by a helper who was also employed by Portland Wire and Iron. Fisher directed the crane and truck operators to the particular locations where steel was to be unloaded. At the site where Fisher was hurt, there were present in addition to himself and his own workman two Wilhelm truck drivers and a Wilhelm crane operator. The load being unloaded when the accident befell Fisher consisted of fabricated steel trusses, about 20 feet long.

It was to the benefit of Fisher's employer not to have the heavy steel units dumped helter skelter in a pile as they came off the Wilhelm trucks. No specific directions appear to have been given by either Wilhelm or Fisher's employer, but by common consent the workmen of both employers had followed the obvious course of unloading the steel in an orderly manner to expedite its future employment in the building.

At the time of the accident, Fisher and his helper were on the ground at the place where he wanted the steel unloaded. The Wilhelm truck drivers were on

the bed of the truck which was being unloaded. One of the Wilhelm drivers acted as signalman for the crane operator, and by hand signals indicated to the crane operator when to raise the load being lifted off the truck. Fisher then took over the hand signals for the lowering operation. Fisher and his helper were using their hands to guide the steel as it was being slowly lowered into position where Fisher had indicated it was to lie.

The evidence showed that when a heavy load was being lowered by the crane, the sling around the load converged at the approximate center of gravity above the load, and the load was in relative balance. Thus only a slight amount of manual strength was required to move a free-swinging crane load from side to side in order to align the load as it came to rest. A man of ordinary strength, the evidence showed, could easily guide a load of steel weighing several thousand pounds.

As Fisher was guiding a load into place with one hand and signalling to the craneman with the other, something happened in the crane operation to cause the load to drop, crushing Fisher's foot.

There is a dispute in the evidence whether there was negligence on the part of Wilhelm's employee who operated the crane, but that question is not before this court. We are called upon to determine whether or not the action will lie, not whether Wilhelm might have been negligent.

The trial court found, and there is no evidence to the contrary, that Wilhelm had the exclusive control of the operation and upkeep of the crane. Fisher's employer had no right of control over the care and operation of the crane, and Wilhelm had no right of control over Fisher or his fellow workman.

The significant facts can thus be summarized. Five men were unloading the second of two trucks sent to Fisher's employer by Wilhelm, an independent employer who had no interest in the building Fisher was helping to construct. Three of the five men were employed by, and were under the general control of Wilhelm. Two of the five men were employed by and were under the general control of Portland Wire and Iron. Neither employer's workmen had express or implied authority to control the actions of the other employer's workmen. If a dispute had arisen concerning their authority, both groups of workmen undoubtedly would have reported back to their own employers for instructions.

All five of the men were engaged in unloading steel. Fisher was in charge of the work on the ground, and, if asked, the Wilhelm men would have said they were in charge of their own trucks and the crane. They were asked, and so stated, at the trial. By common consent, all five cooperated and unloaded the steel in the most expeditious and orderly way they could. The crane operator testified that he followed signals from both Fisher and the Wilhelm truck drivers, depending upon the man who, at a given time, was in the best position to give the needed signal. The crane operator testified that he had been told to report to Fisher, and that he considered Fisher to be in general charge of the unloading.

If any one of the men had not been sent to the job by his respective employer, some other man would have had to be supplied by the other employer, or the work would not have proceeded as expeditiously as desired.

With these facts in mind, it becomes necessary to determine (1) whether there was joint supervision

and control of the premises, and (2) whether the workmen of both employers were engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation.

There was joint supervision over the premises as premises are defined in the quoted section, and there was joint control over the actual operation. The facts are on all fours with the facts in *Nelson v. Bartley,* supra, and the cases discussed therein.

The question whether the two groups of workmen were engaged in a common enterprise requires the court in each case to decide where to draw the line which separates the individual concerns of the two employers from community of enterprise or "the accomplishment of the same or related purposes in operation." ORS 656.154 (2).

Clearly, Wilhelm would be eliminated from any common enterprise if the controlling element of "enterprise" is the ultimate project, as, in this case, the construction of a supermarket. Wilhelm had no concern with building construction. Its only concern was the delivery of steel.

But an examination of the actual work that was being done, the unloading of steel, leaves no doubt that the unloading of steel was a common enterprise. Both employers were interested in having the steel unloaded, Wilhelm in getting it done quickly, and at the same time in a manner that would result in Wilhelm having a satisfied customer, Portland Wire and Iron in having it unloaded in a manner that would make for the economical use of the steel in the final construction.

■ The test of whether or not an activity can be said to be in furtherance of a common enterprise logically is to examine what it was that the workmen were

doing at the time of the accident. *Brown v. Underwood Lumber Co.*, 172 Or 261, 267, 141 P2d 527; *Inwall v. Transpacific Lumber Co.*, 165 Or 560, 571, 108 P2d 522.

The activity at the time and place where Fisher was injured makes a better case for community of enterprise than did the facts of *Nelson v. Bartley,* supra. There the activity was the dumping of logs into Coos Bay. The precise manner of dumping logs was of no particular concern to the sawmill owners as they would have been satisfied so long as the logs floated within the boom area, regardless of which log hit the water first. But the operation required the active participation of the workmen of both employers in the scope of their employment.

This court has consistently held in the log-dump cases that there is a common interest in getting the logs off the truck and into the pond even though one employer is in the business of bringing logs out of the woods and the other employer is in the business of manufacturing them into a finished product. We mentioned profit sharing in one case as evidence of a common enterprise, but that was not the controlling fact in the case. *Long v. Springfield Lumber Mills, Inc.,* 214 Or 231, 327 P2d 421. The same kind of activity at the brow log would have been taking place had there been no profit-sharing agreement but merely a contract to deliver logs into the pond for a price.

In *Claussen v. Ireland,* 216 Or 289, 338 P2d 676, there was an accident at the woods end of the log-hauling process. There the injured workman at a logging landing was struck by a truck being maneuvered under a loading device by a workman whose employer had contracted to furnish trucks and

to haul logs. We held that there was joint supervision of the premises and a furtherance of a common enterprise under circumstances very like those existing in the instant case.

In the log truck cases, of which *Nelson v. Bartley,* supra, is the most recent example, this court has consistently held that the workman is barred under the exclusionary provisions of ORS 656.154 when the injuries are sustained on the premises where, at the time and place, the workmen of two covered employers are engaged in the component parts of the same operation. We have held that it is the combined activity of the workmen of two employers which must be proved in order to establish the defense, but that it is not necessary to prove that the two employers were engaged in a common enterprise as their ultimate business objective. *Hensler v. City of Portland,* 212 Or 28, 318 P2d 313.

In every case involving the quoted section of the Compensation Act since *Johnson v. Timber Structures, Inc.,* 203 Or 670, 281 P2d 723, which was decided in 1955, the *Johnson case* has been cited by counsel as if it announced a different rule. After stating and following the rule announced in our previous decisions, the *Johnson case* held that the workman was not barred in that case because there was no combination of workmen engaged in the same operation at the time and place where Johnson received his injuries. If the separate concurring opinion in the *Johnson case* is read with the facts of that case in mind, the extended discussion of the cases from other states will be seen to be *dicta.* It is this *dicta,* however, which keeps coming back to this court in the briefs of counsel, rather than the holding of the case.

The *Johnson case* was correctly decided upon its facts. The rule with respect to the pickup and delivery of merchandise as found in that case has since become the statutory law of this state. ORS 656.154 (3). The separate concurring opinion, however, in discussing the Minnesota decisions under a similar statute, contained language which has apparently led counsel astray and which should be put to rest.

The difficulty in harmonizing the language of the *Johnson case* with the other decisions of this court, both before and after the *Johnson case,* arises out of the quoted portions of the Minnesota decisions beginning on page 687 (203 Or) where the impression might be given that proof of a common business enterprise is essential in order to bar an injured workman. Such may be the rule in Minnesota, but it has never been the rule in this state.

The correct rule is restated in the *Johnson case* at page 695:

"* * * Under the rule, before an injured workman can be denied his common law right of action for damages against a negligent third party, three conditions must concur and combine; viz., at the time of the injury (1) the negligent third person must have been an employer subject to the provisions of the Workmen's Compensation Act; (2) he or his workmen causing the injury must have had *joint supervision and control* with the injured workman's employer *over the premises* where the injury occurred; and (3) he and the injured workman's employer must have been engaged in furtherance of *a comman* [sic] *enterprise* or in the accomplishment of *the same or related purposes in operation,* which means that the injured workman must have been working with the employes of the tortfeasor in a common activity and exposed to the same hazards created by such mutual engagements of the employers."

■ The facts of the instant case fall squarely within the exclusion of the three-part test set forth above. Fisher's employer and Wilhelm were both covered by the Act. Both Fisher and the Wilhelm employes had supervision and control over the premises where the injury occurred, as premises are defined in the Act. Both Fisher and the Wilhelm employes were engaged in the accomplishment of the same purposes in operation. The operation being conducted when the injury occurred was the unloading of steel in a specified area and in a prescribed manner which required the joint efforts of the workmen of both employers and which exposed all of them to the same hazards of the operation.

The trial judge to whom the case was assigned followed the law of the case which had been established by the presiding judge who heard the preliminary proceedings. No error has been assigned to the trial of the cause, but the presiding judge should have ruled for the defendant when the preliminary question was tried before the court without a jury.

Reversed.