Argued June 8, reversed with instructions November 3, 1965

SHOEMAKER *v.* JOHNSON ET AL

407 P. 2d 257

512

Leo Levenson, Portland, argued the cause for appellants. With him on the briefs was Pat Dooley, Portland.

Philip A. Levin, Portland, argued the cause for respondent. With him on the brief were Pozzi, Levin & Wilson, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell,* Goodwin, Denecke and Holman, Justices.

PERRY, J.

The plaintiff obtained a verdict for damages for personal injuries against the defendants Johnson and Wallace. These defendants contend that they and the plaintiff's employer are employers subject to the Workmen's Compensation Act and, therefore, are immunized against plaintiff's claim. Defendants appeal from the trial court's findings and conclusions that such defendants are not immune. The trial court dismissed the action against the defendant Peter Kiewit Sons' Co.

Kiewit had a contract with the state to construct a portion of Interstate Highway No. 5 in southern Oregon. Plaintiff was a driver employed by Page Paving

---

· * O'Connell, J., did not participate in this decision.

Co. who had a contract with Kiewit to mix, haul, and spread asphalt. The defendant Johnson had a contract with Kiewit to haul rock. Defendant Wallace was an employee driving for Johnson. All the defendants except Wallace were employers subject to the Oregon Workmen's Compensation Act.

Kiewit owned some land south of where the actual highway work was being done. On this land Kiewit's stockpiles of rock, maintenance sheds of the employer-defendants, and Page's asphalt plant were located. When Kiewit had the roadbed ready for the rock, Johnson hauled it from the stockpile to the roadbed where it was dumped. After the rock was put in place by Kiewit, Page hauled the asphalt and dumped it in its paving machine, which placed it on top of the rock.

The trucks hauling the rock and asphalt made the roundtrip to and from the paving operation over that portion of the new Interstate 5 Highway which was not yet open for public travel and on portions of old Highway 99. The plaintiff was injured on Interstate 5 while he was driving a loaded truck. He swerved and overturned his vehicle attempting to avoid a truck driven by Wallace, who was just entering Interstate 5 from Highway 99.

ORS 656.154 provides:

"(1) If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the em-

ployer of the injured workman and was an employer subject to ORS 656.002 to 656.590.

"(2) As used in this section, 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation.

"(3) No person engaged in pickup or delivery of any goods, wares or merchandise to or from the premises of any employer other than his own shall be deemed to have joint supervision or control over the premises of a third party employer."

The trial court made a conclusion of law that the injury occurred upon "premises" within the above statute. It further concluded that all of the defendants "were engaged in the furtherance of a common enterprise in that they were occupying the same premises and were performing component parts of a general undertaking." These conclusions are not in issue.

The trial court found: "Conferences between Kiewit and defendant Johnson and Page Paving were for the purpose of informing Johnson and Page Paving of the decisions already made by Kiewit." This finding undoubtedly referred to decisions regarding when and upon what route the trucks were to haul. The testimony of Kiewit's superintendent upon this issue was not completely clear, but a reasonable interpretation of it would support the trial court's finding.

The trial court made a finding of fact that Kiewit had exclusive control and supervision over the entire hauling area, including the place of the injury, and made a conclusion of law: "No joint supervision and control existed between the defendants Johnson and Wallace and plaintiff's employer, Page Paving Co."

The making of this finding and conclusion is defendant's principal assignment of error.

The above-quoted statute has been interpreted many times by this court and many of the voids in the outline of the statute have been marked in by our decisions.

As a factual categorization, this is a case of a construction project in which an employee of one sub-contractor is injured on the project by an employee of another subcontractor. We have not decided exactly such a case; however, we have several decisions involving construction employees.

*Plummer v. Donald M. Drake Co.*, 212 Or 430, 320 P2d 245 (1958), was an action for injuries by an architect's employee who was injured on the job site while supervising the construction of a school. The defendant was the general contractor for the school. The issue was decided upon the pleadings. However, we held that proof of the above-stated facts would bar plaintiff from recovering; so it must necessarily be inferred that we held that the above-stated facts established joint supervision and control by the architect and general contractor over the construction project.

In *Fisher v. Rudie Wilhelm Warehouse Co.*, 224 Or 26, 355 P2d 242 (1960), the plantiff was an employee of a subcontractor on a shopping center construction job. His employer, Portland Wire, had the subcontract to erect the structural steel. The defendant was engaged by Portland Wire to haul the steel to the job and unload it with a truck crane. Plaintiff showed defendant where to unload steel and was assisting with the unloading when injured. We reversed the trial court and held as a matter of law that Portland Wire and Wilhelm had joint supervision and control of the premises.

In *Pruett v. Lininger,* 224 Or 614, 356 P2d 547 (1960), the injured plaintiff was an employee of a general contractor building a bridge. The defendant subcontractor furnished the general contractor with ready-mixed concrete and a crane and bucket to place the concrete. The crane operator was on defendant's payroll but placed the concrete pursuant to the directions of the general contractor's employees, including the plaintiff. While placing the concrete plaintiff was burned by electricity when the crane contacted a charged electric line. Assuming the crane operator to be the defendant's employee, we held that the general contractor and the crane and concrete subcontractor were in joint supervision and control of the premises. The opinion contains several general statements which are guides to interpreting the statute:

> "* * * In *Nelson et al v. Bartley et al,* 70 Adv Sh 1529 [222 Or 361], 352 P2d 1083 [1960], we held that the exclusive coverage of the Workmen's Compensation Act applies when there is an operational co-mingling of the workmen of two or more covered employers even though only one of the covered employers may be said to be in actual control of the site where the work is under way. [at 623]

> "* * * * *

> "* * * a third-party action authorized by ORS 656.154 is nevertheless available *unless the two employers were engaged in the performance of component parts of an undertaking on premises occupied by the workmen of both covered employers.* * * * [at 624]

> "* * * * *

> "* * * It is the legislative policy of this state to encourage employers to accept the coverage of the Compensation Act by making that act the

exclusive remedy for industrial accidents suffered by workmen of the covered employer as well as by the workmen of other covered employers engaged in the furtherance of a common operation, where the workmen of both employers are jointly involved in the work out of which the accident arises.  *   *   *"

*Hadeed v. Wil. Hi-Grade Concrete Co.,* 238 Or 513, 395 P2d 553 (1964), concerned facts legally identical to *Pruett v. Lininger,* supra (224 Or 614). We held:

> "* * * As in the cases cited, there are found here a concert of effort and a mingling of the employees of both employers and their common exposure to the hazards of the work going forward, all designed to facilitate its accomplishment. Within the construction heretofore placed by us upon ORS 656.154 (see, e.g., *Pruett v. Lininger et al,* 224 Or 614, 356 P2d 547), the premises where plaintiff was injured were premises over which the two employers had joint supervision and control.  *   *   *"
> (at 516)

The concurring opinion in *Johnson v. Timber Structures, Inc.,* 203 Or 670, 281 P2d 723, has been repeatedly quoted by plaintiffs seeking to avoid the defense afforded by ORS 656.154. However, in that case the concurring opinion states:

> "* * * On the other hand, if several contractors or subcontractors are actively engaged at the same time on the same project and their several employes are exposed to the same hazards created by such mutual engagements, and an employe of one of the employers is injured on the job, such employe's sole remedy would be that of compensation under the act." (at 685-686)

The plaintiff concedes that applying the facts in this case to our prior decisions interpreting "joint

supervision and control" as used in the statute would require a reversal of the judgment against the defendant Johnson.

He urges, however, that our former opinions are in error in that, if the term "joint supervision and control" is literally construed, as he contends it should be, then in those instances where a general contractor is in charge of an entire project he alone has supervision and control of the premises. In these instances, he argues, subcontractors cannot be said to have joint supervision and control of the same premises.

■ The plaintiff fails to consider a fact that must be conceded, i.e., when a general contractor permits a subcontractor to enter upon premises for the purpose of carrying on a common project, the general contractor has then surrendered a portion of his supervision and control over the premises to the other contractor.

Our former opinions give realistic meaning to the legislative intention and we adhere to them.

The plaintiff also contends that even though the premises were under the joint supervision and control of covered employers at the time of plaintiff's injury, nevertheless, a literal reading of ORS 656.154 permits the plaintiff to maintain his action against the defendant Melvin Wallace, an employee of the covered employer Johnson.

While the language of ORS 656.154 may not be as explicit as might be desired, the intention of the legislature may be distinctly discerned therein if a few basic principles involved in the Workmen's Compensation Law are kept in mind.

■ In passing the Workmen's Compensation Act the common-law concept of tort liability through the

fault concept and vicarious liability was abolished to serve the present-day needs of society by providing a means whereby an employee was guaranteed a monetary recovery, medical care and a hope of rehabilitation, and to avoid "the great and unnecessary cost * * * incurred in litigation." ORS 656.004.

■ When the parties are covered by the act, the rights of a covered workman are based upon the contract between the employee, the employer and the state. *Nadeau v. Power Plant Engr. Co.,* 216 Or 12, 337 P2d 313; *West et al v. Kozer,* 104 Or 94, 206 P 542. And the rights and remedies provided by the act are exclusive. *Stout v. Derringer,* 216 Or 1, 337 P2d 357; *Nadeau v. Power Plant Engr. Co.,* supra; *Ellis v. Fallert et al,* 209 Or 406, 307 P2d 283.

> "An injured workman cannot have *both an award* of compensation and *an action* for damages against a purported tort feasor except in the *specific instances mentioned in the act.*" *Kowcun v. Bybee,* 182 Or 271, 296, 186 P2d 790. (Emphasis supplied.)

■ Since the act governs the rights of all parties subject to the act, the question presented is,—Was it the intention of the legislature to grant the injured workman a third party action against the employee of another covered employer subject to the same risks because their employers were in joint supervision and control of the premises when the injury occurred?

A construction placed upon ORS 656.154 as the result of a literal reading of the second sentence produces an absurdity. The subject of the clause beginning with the word "if" in the second sentence of the section is "he [the employer] or his workman causing the injury." Two predicates follow—the first relating to

joint supervision and control and the second the final phrase "and was an employer subject to ORS 656.002 to 656.590." Omitting the first predicate for purposes of clarity, the clause reads: "if he or his workman causing the injury  *  *  *  was an employer subject" to the act. As a workman is not an employer, the legislature, under a literal interpretation of the second sentence, is made to say that the action shall not be brought against a third person if a workman causing the injury was an employer subject to the act. This is, of course, absurd. To avoid the absurdity and give effect to the obvious intention of the legislature, the last phrase of the section must be construed as though it read: "and such employer was subject to ORS 656.002 to 656.590."

Also, the attempt to give a literal interpretation to the second sentence creates the strange situation that the injured employee, although he may recover from the workman causing his injury, is denied his lawful remedies against the workman's employer under the doctrine of respondeat superior. Certainly the legislature did not intend to grant an injured employee his full legal remedy against third party tort feasors in some instances and only partially in others.

> "Although the legislature may, if it chooses, enact absurd legislation, the courts will always, when examining a statute, begin the inquiry with the presumption that the legislature did not intend to dignify an absurdity with the solemnity attaching to a law." *State v. Gates,* 104 Or 112, 123, 206 P 863.

ORS 656.154, so far as is pertinent, reads as follows:

> "(1) If the injury to a workman is due to the negligence or wrong of a third person not in the

same employ, the injured workman, * * *, may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.002 to 656.590."

The first sentence of the paragraph in question states that an injured workman has a cause of action against any person causing him injury except when that injury is caused by a workman in the same employ, *Kowcun v. Bybee,* supra. The subject matter of the first sentence is the injury done to a workman. Leaving out the words of limitation, this sentence reads,—"If the injury to a workman is due to the negligence or wrong of a third person * * * the injured workman * * * may elect to seek a remedy against such third person." Replacing the limitation, this sentence states the injured workman may "elect to seek a remedy" against the wrong or negligence of any third person except *if his injury* is due to the negligence or wrong of a person in the same employ. Thus the circumstance which denies him his election of remedies is injury by a fellow employee.

The word "However" in the second sentence is a reservation upon the general right of election of remedies granted in the prior sentence, for it states "no action shall be brought against any *such third person.*" (Emphasis supplied.) The balance of the paragraph then states the circumstances under which an election to seek a remedy against any such third person is denied. These circumstances which deny a right of election are as follows:

(1) The injury was caused by an employer subject

to the act or his employee, and (2) the injury occurred on premises over which the employer of the injured workman and the employer causing the injury, either directly or through his employee, were at the time of the injury in joint supervision and control.

This interpretation is given added emphasis when we consider our prior statements of the purpose of the latter sentence of ORS 656.154.

In *Mason v. Sutherlin,* 240 Or 51, 399 P2d 1016 (1965) we stated:

> "It is clear that the expressed purpose of this provision of the act, exempting employers in joint control of premises while engaged in a common enterprise, was to spread the contractual provisions of the act so that, while such an operation is in effect, the employees of each employer are to be considered in the same posture as if there was but a single employer." (at 1018)

We therein quoted with approval *Rasmussen v. George Benz & Sons,* 168 Minn 319, 325, 210 NW 75, 77, 212 NW 20, as follows:

> "* * * Being engaged in a 'common enterprise' or 'in the accomplishment of the same' or 'related purposes' in operation on the premises puts all the employers so engaged in the relative, if not actual, position of an employer of any such employe. * * * In short, the community of interest gives the third party, who is subject to the Compensation Act, under this statute the status of an employer toward the employe."

Cf. Specially concurring opinion of Mr. Justice Tooze in *Johnson v. Timber Structures, Inc.,* 203 Or 270, 281 P2d 723, which opinion was concurred in by the majority of the court.

An attempted literal interpretation of this para-

graph of the act would not only produce an absurdity, but would ignore the legislative intent.

Larson, the eminent authority on the law of workmen's compensation, reaches the same conclusion as we do in interpreting ORS 656.154, for he states:

> "Oregon's statute bars action against third persons and their workmen who are engaged in a common enterprise and who have joint supervision and control over the place where the enterprise is carried on." 2 Larson's Workmen's Compensation Law 181, § 72.34.

The judgment of the trial court is reversed with instructions to enter judgment for the defendants.

DENECKE, J., dissenting.

I dissent from that part of the majority decision holding that the injured workman cannot recover damages from Wallace, the employee.

We have stated that the immunity clause was inserted for the purpose of encouraging employers to accept the coverage of the Compensation Act. *Pruett v. Lininger*, 224 Or 614, 625, 356 P2d 547 (1960). A grant of immunity to employees is not as direct or as enticing an inducement to an employer as a grant of immunity to an employer himself. On the other hand, the statute grants immunity to fellow employees, i.e., persons employed by the employer of the injured party, and it is difficult to see any reason why the legislature would exempt such employees and not those working for immune third-person employers.

Without any clear policy considerations favoring a preference for one statutory construction over another, the literal wording of the statute will have to be the sole guide. This principle was followed in interpreting

the present statute in *Wimer v. Miller,* 235 Or 25, 30, 383 P2d 1005 (1963), in which an alleged negligent physician treating the injured workman was held not immune from a malpractice suit. The statute is as follows:

> "(1) If the injury to a workman is due to the negligence or wrong of a *third person not in the same employ,* the injured workman * * * may elect to seek a remedy against such third person. However, no action shall be brought against any such third person *if he or his workman causing the injury* was, at the time of the injury, on premises over which *he had joint supervision and control* with the employer of the injured workman and *was an employer* subject to ORS 656.002 to 656.590." (Emphasis added.)

Paraphrasing, the statute provides that an injured workman can recover damages against any third person except fellow employees, except that employers having joint supervision and control over the premises where the injury occurred are immune. The italicized phrases make a distinction between employers and their workmen. The last clause specifically limits immunity to "an employer subject to [the Act] * * *."

In my opinion ORS 656.154(1) does not provide immunity for employees of third-person employers.

SLOAN, J., joins in this dissent.

SLOAN, J., dissenting.

Although I agree with the dissent of Mr. Justice DENECKE, I also believe that the evidence does not support the finding that there was joint supervision and control over the premises where the accident occurred. The decision of the trial court should be affirmed.