Argued and submitted November 30, 1992, reversed and dismissed in part; otherwise affirmed May 12, 1993

Michael C. BECKETT,
Scott P. Blackmer, Mark Gilgan,
Raymond C. Keith, Scott D. Wood,
Maryjo Meyer, Jolie K. Perrin,
Chrisandra L. Pidcock and Barry Sanford,
*Respondents,*

Phillip K. HALE,
*Plaintiff,*

*v.*

COMPUTER CAREER INSTITUTE, INC.,
an Oregon corporation,
*Appellant,*

NATIONAL ASSOCIATION OF
TRADE AND TECHNICAL SCHOOLS,
*Defendant.*

(A8906-03397; CA A67424)

852 P2d 840

Susan E. Watts, Portland, argued the cause for appellant. With her on the briefs were Jack L. Kennedy, David E. Hull and Kennedy, King & Zimmer, Portland.

Charles Robinowitz, Portland, argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

.

## EDMONDS, J.

Defendant Computer Career Institute (CCI)[1] appeals from a judgment for plaintiffs following a trial in which the jury found it liable for damages resulting from violations of the Unlawful Trade Practices Act (UTPA), ORS 646.605 *et seq*, and the Oregon Racketeer Influenced and Corrupt Organizations Act (ORICO). ORS 166.715 *et seq*. It assigns error to the court's failure to grant a directed verdict under ORCP 60 and to the award of punitive damages and attorney fees. Also, defendant moves this court for an order dismissing the ORICO claims for failure to state ultimate facts sufficient to constitute a claim. ORCP 21A(8). We grant defendant's motion to dismiss, and otherwise affirm.

Plaintiffs[2] offered evidence that they are former students of defendant. When defendant recruited plaintiffs as students, defendant's admission representatives told them that its placement rate for graduates was between 85% and 96%. In reliance on that representation, plaintiffs enrolled in defendant's school.[3] At the same time, defendant was reporting a placement rate of approximately 50% to its accrediting agency. When plaintiffs completed their education at CCI, they were unable to obtain employment related to their training at CCI, resulting in these claims.

Initially, we consider defendant's motion to dismiss the ORICO claims for failure to state ultimate facts sufficient to constitute a claim. ORCP 21A(8). It raises this motion for the first time on appeal and argues that, because plaintiffs are seeking damages for a violation of ORS 166.720(1), they must plead facts tending to show that they were injured by the use or investment of racketeering income.

■   A motion to dismiss for failure to state ultimate facts sufficient to constitute a claim can be raised for the first time on appeal. However, when raised for the first time on appeal,

---

[1] Plaintiffs brought their original claims against both CCI and National Association of Trade and Technical Schools (NATTS). The court dismissed the claims against NATTS and plaintiffs do not assign that as error.

[2] The court dismissed plaintiff Hale's claims and he is not a party to this appeal.

[3] Plaintiffs testified that they had "a lot riding on the decision" to attend CCI and that the high placement rate represented to them a greater probability of getting jobs following their training at CCI.

we look beyond the allegations of the complaint to the evidence presented to determine whether the party has proven a claim. *Richards v. Dahl*, 289 Or 747, 752, 618 P2d 418 (1980). In *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 219, 493 P2d 138 (1972), the court explained that,

> "where the defect in a pleading, even though material, consists of a mere omission to state a necessary fact, and it appears that the omitted fact could have been added by amendment, the entire record will be examined when the pleading is attacked for the first time on appeal. If we can determine that the omission did not result in surprise or prejudice, or prevent a full trial of the real issues between the parties, and that the evidence disclosed the existence of a cause of action, we will not reverse, but will treat the case as though the question had been raised at the proper time and the pleadings amended accordingly."

In the light of that standard, we turn to the statutory requirements of a claim under ORS 166.720(1), which provides:

> "It is unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest or equity in, real property or in the establishment or operation of any enterprise."

Oregon's RICO statute is patterned after the federal RICO statutes, 18 USC § 1962 *et seq*, and federal case law interpreting the federal statute is persuasive in interpreting it. *State v. Blossom*, 88 Or App 75, 79, 744 P2d 281 (1987), *rev den* 305 Or 22 (1988). 18 USC § 1962(a) is the analogous statute. To establish a claim under that statute, a plaintiff must allege and prove that he was injured by the defendant's use or investment of income derived from racketeering, not injury resulting from the predicate acts of racketeering. *Craighead v. E. F. Hutton & Co., Inc.*, 899 F2d 485 (6th Cir 1990); *Ouaknine v. MacFarlane*, 897 F2d 75 (2d Cir 1990); *Grider v. Texas Oil & Gas Corp*, 868 F2d 1147 (10th Cir), *cert den* 493 US 820 (1989); *Rose v. Bartle*, 871 F2d 331 (3d Cir 1989).[4]

---

[4] A claim that alleges injury from predicate acts and a pattern of racketeering falls under 18 USC § 1962(c) or ORS 166.720(3).

■     Here, plaintiffs allege that defendant "knowingly received proceeds derived from its pattern of racketeering activity." The jury could infer from the evidence at trial that defendant invested the proceeds from tuition payments into its business. However, the mere reinvestment of racketeering income into the defendant's business is insufficient to support an 18 USC § 1962(a) claim. *See Brittingham v. Mobil Corp.*, 943 F2d 297 (3d Cir 1991).[5] The connection between a defendant's use or investment of racketeering income and a plaintiff's injury must be more immediate, such as the injury to defendant's competitors. The rationale is:

> "If this remote connection were to suffice, the use-or-investment injury requirement would be almost completely eviscerated when the alleged pattern of racketeering is committed on behalf of a corporation. * * * Over the long term, corporations generally reinvest their profits, regardless of the source. Consequently, almost every racketeering act by a corporation will have some connection to the proceeds of a previous act. Section 1962(c) is the proper avenue to redress injuries caused by the racketeering acts themselves. If plaintiffs' reinvestment injury concept were accepted, almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and the distinction between § 1962(a) and § 1962(c) would become meaningless." 943 F2d at 305.

■     Because of the similarity between 18 USC § 1962(a) and ORS 166.720(1), we hold that the same standard applies to ORS 166.720(1). We find nothing in the record to indicate that plaintiffs were injured by defendant's use or investment of the racketeering income within the meaning of ORS 166.720(1). Defendant's motion to dismiss the ORICO claims for failure to allege facts sufficient to constitute a claim is granted.[6] ORCP 21A(8).

---

[5] *But see Blue Cross of Western Pennsylvania v. Nardone*, 680 F Supp 195 (WD Pa 1988) (holding that allegations that the defendant reinvested racketeering proceeds into his business and thereby was able to continue his racketeering activity alleged sufficient injury from the "use and investment" of racketeering income).

[6] Because of our resolution of this issue, we need not address defendant's argument that the court erred in failing to grant its motion for a directed verdict on the ORICO claims. Moreover, plaintiffs incorrectly argue that they established their ORICO claims under ORS 166.720(3). They did not offer any evidence of an "enterprise" with which defendant was associated.

■ Defendant assigns error to the court's denial of its ORCP 60 directed verdict motion on plaintiffs' UTPA claims.[7] We view the evidence in the light most favorable to plaintiffs and will reverse only if there is no evidence from which the jury could have found the necessary facts. *Brown v. J. C. Penney Co.*, 297 Or 695, 688 P2d 811 (1984).

Defendant argues that, even if there is evidence of a misrepresentation concerning its placement rates, there is no evidence of any causal connection between plaintiffs' damages and defendant's misrepresentations. Plaintiffs were awarded damages for the cost of tuition and for income lost as a result of leaving their employment to enroll at CCI. Defendant argues that plaintiffs' claim that they would not have enrolled in defendant's classes had they known the actual placement rate for all graduates is insufficient causation on which to award damages under *Criqui v. Pearl Music Company*, 41 Or App 511, 599 P2d 1177, *rev den* 288 Or 173 (1979). Moreover, it contends that they received the education and training that defendant promised, that jobs were not promised, and that there was no evidence from which the jury could determine whether their failure to obtain training-related employment was because of the misrepresentations.

Defendant misconstrues both our holding in *Criqui v. Pearl Music Company, supra*, and plaintiffs' claims. In *Criqui*, we said:

> "Plaintiff's lost wages and the net operating loss present a different problem [than whether the difference between the purchase price and the market price of a distributorship on the date of purchase was the proper measure of damages]. There was no evidence that the misrepresented matters on which plaintiff relied in any way caused the income of the business to be less or its expenses to be greater during the period plaintiff operated it. There may have been evidence from which the jury could have inferred that plaintiff would not have purchased the business had it not been for the

---

[7] Plaintiffs alleged that defendant violated ORS 646.608(1)(e), which provides that a person engages in an unlawful practice when, in the course of the person's business, vocation or occupation, the person:

"Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that they do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have."

representations * * *. Such 'but for' causation, however, is not sufficient by itself to establish the link between the wrong and the damage claimed. If it were, a person who had been induced to enter into any business by a fraudulent misrepresentation could recover for any loss he might thereafter suffer in the business, regardless of whether there was any other relationship between the loss and the misrepresentation. * * * [S]uch attenuated causation is not a sufficient basis for holding one responsible to make up every loss that would not have occurred had there been no fraud." 41 Or App at 516. (Citation and footnote omitted.)

We held that causation of damages occurs in such situations only when the fact misstated "was of a nature calculated" to bring about the result giving rise to the damages. 41 Or App at 518. In this case, defendant was aware that, in reliance on defendant's representations, plaintiffs would terminate their employment, enroll in defendant's courses and pay the assessed tuition. Contrary to defendant's argument, there was evidence from which the jury could determine that the training at CCI did not qualify plaintiffs to obtain the employment for which defendant had promised they would be qualified.

■     Defendant argues that, even if plaintiffs' damages were foreseeable, the correct measure is the difference between the value of the education provided and the value of the education without the fraud. When the misrepresentation "does not involve the sale of property, the measure of damages must be flexible to compensate the plaintiff for whatever loss he has suffered." *Dizick v. Umpqua Community College*, 287 Or 303, 312, 599 P2d 444 (1979). In that case, the court held that lost wages for enrolling and continuing in college was not an improper measure of damages for a student who brought an action against a community college for false representation after he did not receive promised training. The trial court did not err when it used a similar measure of damages.

■     Defendant next assigns error to the trial court's failure to withdraw punitive damages from the jury on the UTPA claim. A party is required to state to the court the specific grounds for its motion so that the court is aware of the grounds on which the movant relies. Defendant failed to state specific grounds and therefore did not properly preserve the

claim of error that it now argues. *See Sieverson v. Allied Stores Corp.*, 97 Or App 315, 318, 776 P2d 38, *rev den* 308 Or 382 (1989).

■ Defendant also assigns error to the trial court's award of attorney fees to plaintiffs. Because of our resolution of the UTPA claims, an award of attorney fees was within the trial court's discretion. *Pelfrey v. Kuni Cadillac, Inc.*, 49 Or App 241, 619 P2d 662 (1980), *rev den* 290 Or 491 (1981).

Judgment on ORICO claims reversed and claims dismissed; otherwise affirmed.