Argued and submitted September 9, 1994, affirmed February 22, petition for review allowed August 1, 1995 (321 Or 429)

Virginia KILMINSTER,
Curtis Irwin, Sr., and
Curtis Irwin, Sr., as Personal Representative of
the Estate of Curtis Irwin, Jr. (the decedent),
*Appellants,*

*v.*

DAY MANAGEMENT CORPORATION,
an Oregon corporation,
dba Clackamas Communications,
and Gordon Day,
*Respondents,*

*and*

KSGO/KGON, INC.,
a Washington corporation;
Motorola, Inc.,
a Delaware corporation; and
Skilling Ward Magnusson Barkshire, Inc.,
a Washington corporation,
*Defendants.*

(9301-00574; CA A82220)

890 P2d 1004

Tom Steenson argued the cause for appellants. With him on the brief were Michael Schumann, Terrance M. McCauley and Steenson & Schumann.

Howard Rubin argued the cause for respondents. With him on the brief was Amburgey, Segel & Rubin, P.C.

Before Riggs, Presiding Judge,* and De Muniz and Leeson, Judges.

De MUNIZ, J.

Leeson, J., concurring in part; dissenting in part.

.

---

* Riggs, P. J., *vice* Rossman, P. J., retired.

## De MUNIZ, J.

Plaintiffs are the parents and personal representative of decedent, who was killed when he fell more than 400 feet while working inside the KGON tower. Defendant Day Management Corporation (DMC) was decedent's employer, and defendant Day is the president of DMC.[1] Plaintiffs brought this action alleging, *inter alia*, a claim of negligence against DMC, a claim under ORS 656.156(2) that DMC deliberately intended to produce decedent's injury or death, and a claim against DMC and Day for violating Oregon's Racketeering Influenced and Corrupt Organization Act (ORICO). ORS 166.715 *et seq.*

■ Defendants filed motions to dismiss for failure to state claims. ORCP 21A(8). The trial court granted the motions and entered judgment under ORCP 67B. On review of claims dismissed under ORCP 21A(8), we accept as true the allegations pleaded in the complaint. *Nicholson v. Blachly*, 305 Or 578, 580, 753 P2d 955 (1988). We affirm.

■ Plaintiffs assign error to the dismissal of their claim for negligence. The trial court held that ORS 656.018 is the exclusive remedy for decedent's death. Plaintiffs argue that ORS 656.018 takes away the parents' claim under ORS 30.020(1) for the wrongful death of their son and replaces it with a burial payment of $3,000. They contend that that result deprives them of their constitutional right to an adequate remedy under Article I, section 10.

The dissent concludes that, under *Neher v. Chartier*, 319 Or 417, 879 P2d 156 (1994), plaintiffs are correct. In *Neher*, the decedent was killed when she was struck by a Tri-Met bus while she was engaged in an activity covered by the Workers' Compensation Law. Her estate sought damages against Tri-Met and the bus driver. Those defendants claimed immunity under ORS 30.265(3)(a) of the Oregon Tort Claims Act, which granted immunity to the public body and its employees if the person injured or killed was covered by the Workers' Compensation Law. The Supreme Court held that ORS 30.265(3)(a) violated Article I, section 10, because it left the plaintiff without a remedy against the public body and its

---

[1] Our references to defendants are to DMC and Day, the only defendants involved in this appeal.

employees to recover for the benefit of the decedent's surviving parents under ORS 30.010.

We note at the outset that the Supreme Court, in *Neher*, stated that

> "ORS 30.020 recognizes the existence of a right of recovery for surviving parents for damages to compensate them 'for pecuniary loss of the society, companionship and services of the decedent.' ORS 30.020(2)(d)." 319 Or at 428.

The Supreme Court made that statement without mention or discussion of the derivative nature of the parent's right to bring a claim under the wrongful death statutes. Under ORS 30.010(2), a parent may recover damages only as provided in ORS 30.020. ORS 30.020(1) provides, in part:

> "When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the * * * surviving parents * * * may maintain an action against the wrongdoer, *if the decedent might have maintained an action, had the decedent lived,* against the wrongdoer for an injury done by the same act or omission." (Emphasis supplied.)

As the dissent correctly notes, the argument can be made that, in *Neher*, the decedent would have been barred from bringing an action. However, from the Supreme Court's omission of any effect of the derivative right, we conclude that it is not germane to the discussion of the rights and remedies under Article I, section 10.

However irrelevant the language of ORS 30.020 might be, we cannot agree with the dissent that the statutory source of the immunity and the defendant's status as the employer are also irrelevant. The dissent concludes that the analysis of rights and remedies in *Neher* controls the analysis here. However, in *Neher*, the court considered the wrongful death statute in a claim brought under the Tort Claims Act. Here, plaintiffs' claim implicates the workers' compensation system directly. The dissent's conclusion would seriously erode — if not destroy — the exclusivity of remedy on which the workers' compensation system depends, *see Shoemaker v. Johnson*, 241 Or 511, 518, 407 P2d 257 (1965), *but see Errand v. Cascade Steel Rolling Mills, Inc.*, 320 Or 509, 888 P2d 544 (1995), and is not commanded by the opinion in *Neher*.

Under the Tort Claims Act, plaintiffs have the right to bring an action for the torts of a public body and its employees. ORS 30.265(1). For purposes of the Act, a tort is defined as "the breach of a legal duty that is imposed by law * * * for which the law provides a civil right of action for damages * * *." ORS 30.260(8). In *Neher*, thus, the consequence of ORS 30.265(3)(a) was to bar the plaintiff's cognizable legal claim.

Here, in contrast, there is no comparable cognizable right of action. With the exception of intentional injury, there is no such thing as tort liability of an employer for a covered worker's injury or death from a comparable injury. The employer's duty to maintain coverage is its exclusive liability to its workers. *Roberts v. Gray's Crane & Rigging*, 73 Or App 29, 32, 697 P2d 985, *rev den* 299 Or 443 (1985). ORS 656.018(1) provides, in part:

> "The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of compensable injuries to the subject workers, the workers' beneficiaries and *anyone otherwise entitled to recover damages from the employer on account of such injuries* * * *." (Emphasis supplied.)

In *Leech v. Georgia-Pacific Corp.*, 259 Or 161, 485 P2d 1195 (1971), the plaintiff was the mentally incapacitated adult child of a worker who was killed in an industrial accident. At that time, the workers' compensation statutes did not provide for benefits on behalf of a child in the plaintiff's situation and she sought to bring a negligence action for her father's death. The Supreme Court rejected the plaintiff's contention that the statutes violated Article I, section 10, of the Oregon Constitution and equal protection. It held that the language of ORS 656.018, which then, as now, included immunity for the employer from actions from "anyone otherwise entitled to recover damages from the employer on account of such injuries," indicated

> "that the legislature intended the remedy provided by compensation to be exclusive and that complying employers are not to be subject to negligence actions by persons omitted from the compensation benefit schedules." 259 Or at 166.

In *Neher*, the Supreme Court's holding was that ORS 30.265(3)(a) violated Article I, section 10, by abolishing

the parent's remedy, pursuant to the wrongful death statutes, under the circumstances of that case: The statute gave immunity from liability not only to the municipality, but also to the municipality's negligent employees. 319 Or at 428. That holding does not abrogate the exclusivity of the workers' compensation system. Plaintiffs here had no cause of action for negligence against defendants, and the trial court did not err in dismissing plaintiffs' claim.

Plaintiffs also assign error to the trial court's dismissal of their claim against DMC under ORS 656.156(2), which provides:

"If injury or death results to a worker from the deliberate intention of the employer of the worker to produce such injury or death, the worker, the widow, widower, child or dependent of the worker may take under this chapter, and also have cause for action against the employer, as if [the workers' compensation] statutes had not been passed, for damages over the amount payable under those statutes."

■ We do not decide whether the estate here may bring a claim, even though ORS 656.156(2) does not provide a cause of action for the worker's estate. Plaintiffs must allege facts showing that they are entitled to bring the statutory cause of action, *see Riddle v. Eugene Lodge No. 357*, 95 Or App 206, 215, 768 P2d 917 (1989), and they have not done so here. Plaintiffs have not pleaded that decedent's "employer had a deliberate intention to injure him or someone else and that he was in fact injured as a result of that deliberate intention." *Duk Hwan Chung v. Fred Meyer, Inc.*, 276 Or 809, 813, 556 P2d 683 (1976).

" '[D]eliberate intention' implies that the employer must have determined to injure the employee. It is not sufficient to show that there was mere carelessness, recklessness, or negligence, however gross it may be. Reckless disregard of the consequences * * * does not charge an intent to injure plaintiff." *Heikkila v. Ewen Transfer Co.*, 135 Or 631, 635, 297 P 373 (1931).

DMC argues that the essence of plaintiff's allegations[2] is that DMC knowingly maintained an unsafe workplace and knew or should have known that eventually

---

[2] Plaintiffs alleged, *inter alia*, that decedent's death "resulted from the deliberate intention of Defendant DMC to produce such injury and death." They alleged that DMC made a deliberate decision to commit multiple violations of Oregon's

someone would be injured or killed thereby. It contends that such allegations do not rise to the level of an allegation that it deliberately sought to produce an injury or death.

Plaintiffs rely on *Lusk v. Monaco Motor Homes, Inc.*, 97 Or App 182, 775 P2d 891 (1989). *Lusk* was an appeal from a summary judgment. The plaintiff's injury was certain: The defendant knew that the plaintiff was suffering from an injury caused by paint, knew that the plaintiff would continue to suffer so long as he worked without a required respirator and, after deliberation, consciously decided not to provide the respirator. We concluded that the jury could infer a deliberate intent to injure.

■ Plaintiffs argue that the dangerous, unsafe and life-threatening climbing conditions in the tower, to which decedent was deliberately subjected by DMC, were no less threatening than the conditions in *Lusk*. However, it is the nature of the injury, not the conditions, that demonstrate intent. As explained by Larson:

> "Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, * * * this still falls short of the kind of actual intention to injure that robs the injury of accidental character.

> "* * * * *

> "If these [case] decisions seem rather strict, one must remind oneself that *what is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather*

---

safety laws regarding fall protection requirements, and that it knew full well of the grave life-threatening danger such violations posed for decedent. They alleged that DMC knew what it was doing and made a conscious decision not to comply with fall protection requirements, even after being cited by the Department of Insurance and Finance, Occupational Safety & Health Division, for such violations, and that it deliberately ignored decedent's complaints about the unsafe working conditions. They alleged that DMC knew that decedent and other employees had slipped and fallen from the tower, that someone was going to fall again and that a fall from over 400 feet was virtually certain to result in death. They alleged that DMC ordered decedent to climb, threatened him with the loss of his job if he did not, and that DMC deliberately withheld the required safety equipment, supervision and training necessary and required by Oregon law to protect decedent from injury and probable death.

*the narrow issue of intentional versus accidental quality of the precise event producing injury.*" 2A Larson, *Workmen's Compensation Law* § 68.13 (1994). (Footnotes omitted; emphasis supplied.)

Here the issue is before us on plaintiff's pleadings. Plaintiffs' allegations show crass indifference to workers' safety; they do not, however, show that DMC intentionally created the accident-causing event. Plaintiffs' allegations do not meet the stringent test for "deliberate intent" to cause injury or death under ORS 656.156. The trial court did not err in dismissing plaintiffs' claim.

Plaintiffs assign error to the trial court's dismissal of their ORICO claims. The racketeering activity is alleged to be acts of safety violations.[3] Plaintiffs alleged claims against DMC and Day under ORS 166.720(1) and (2) and against Day under ORS 166.720(3).[4]

---

[3] The racketeering activity was "criminal activity" under ORS 166.715(6), because the alleged workplace safety violations constituted the misdemeanor of "reckless endangerment" under ORS 163.195.

[4] ORS 166.720 provides, as relevant:

"(1) It is unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity * * * to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest or equity in, real property or in the establishment or operation of any enterprise.

"(2) It is unlawful for any person, through a pattern of racketeering activity * * * to acquire or maintain, directly or indirectly, any interest in or control of any real property or enterprise.

"(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity * * *."

Relevant definitions are contained in ORS 166.715:

"(2) 'Enterprise' includes any individual, sole proprietorship, partnership, corporation, business trust or other profit or nonprofit legal entity, and includes any union, association or group of individuals associated in fact although not a legal entity, and both illicit and licit enterprises and governmental and nongovernmental entities.

"* * * * *

"(4) 'Pattern of racketeering activity' means engaging in at least two incidents of racketeering activity that have had the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents, provided at least one of such incidents occurred after November 1, 1981, and that the last of such incidents occurred within five years after a prior incident of racketeering conduct.

Under ORS 166.725(7)(a), "[a]ny person who is injured by reason of any violation of the provisions of ORS 166.720(1) to (4) * * *" has a cause of action for damages. ORS 166.720(1) prohibits the investment of income derived from a pattern of racketeering activity in an enterprise. ORS 166.720(2) prohibits acquiring an interest in an otherwise legitimate enterprise through a pattern of racketeering activity. Plaintiffs allege that decedent suffered injury and death because of safety violations. They did not allege that they were injured by defendants' use or investment of income derived from racketeering or that they were injured by defendants' acquisition of an enterprise. The trial court agreed with defendants' argument that failure to make those allegations was a failure to allege the requisite injury under subsections (1) and (2).

Plaintiffs argue that that holding was error, because all that they need to allege is an injury resulting from the predicate acts. Plaintiffs acknowledge that, in *Beckett v. Computer Career Institute, Inc.*, 120 Or App 143, 852 P2d 840 (1993), we held that, in order to state a claim under ORS 166.720(1), a plaintiff must plead facts that show that he or she was injured by the use or investment of racketeering income. In arriving at our holding, we noted that ORICO is patterned after the federal RICO statutes, and we adopted the rationale set out in *Brittingham v. Mobil Corp*, 943 F2d 297, 305 (3d Cir 1991), under the analogous federal provision:

" 'If this remote connection [of the mere reinvestment of racketeering income into the defendant's business were sufficient to support an 18 USC § 1962(a) claim], the use-or-investment injury requirement would be almost completely eviscerated when the alleged pattern of racketeering is committed on behalf of a corporation. * * * Over the long term, corporations generally reinvest their profits, regardless of the source. Consequently, almost every racketeering act by a

"(5) 'Person' means any individual or entity capable of holding a legal or beneficial interest in real or personal property.

"(6) 'Racketeering activity' means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit:

"(a) Any conduct which constitutes a crime, as defined in ORS 161.515, under any of the following provisions of the Oregon Revised Statutes:

"* * * * *

"(G) ORS 163.160 to 163.205, relating to assault and related offenses[.]"

corporation will have some connection to the proceeds of a previous act. *Section 1962(c) is the proper avenue to redress injuries caused by the racketeering acts themselves.* If plaintiffs' reinvestment injury concept were accepted, almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and the distinction between § 1962(a) and § 1962(c) would become meaningless.' " 120 Or App at 147. (Emphasis supplied.)

■■ Plaintiffs urge us to reconsider our holding in *Beckett*. We decline to do so. We also conclude that our reasoning there applies to a claim under ORS 166.720(2). ORS 166.720(3) is the avenue to redress injuries caused by the predicate acts themselves. ORS 166.720(2) prohibits a different activity. In order to state a claim under ORS 166.720(2), more must be shown than the acquisition or control of an interest in an enterprise; the plaintiff must allege facts showing that the injury resulted from that acquisition. *See Danielsen v. Burnside-Ott Aviation Training Center*, 941 F2d 1220, 1231 (DC Cir 1991) (plaintiffs who alleged injury as a result of defendants' underpayment of legally required minimum wages and fringe benefits failed to state a claim under 18 USC § 1962(b) because they did not allege injury resulting from the acquisition of an enterprise). The trial court did not err in dismissing plaintiffs' claims under ORS 166.720(1) and (2).

The court also did not err in dismissing the claim against Day under ORS 166.270(3), which prohibits any "person" from conducting the affairs of an "enterprise" through a "pattern of racketeering activity." Plaintiffs claim that Day is the ORICO "person" who participated in the ORICO DMC "enterprise" through a pattern of racketeering activity. The trial court agreed with defendants that "person" must be distinct from "enterprise," and that Day, as the president and agent of DMC, is not distinct. Plaintiffs argue that Day is "merely the corporate DMC Enterprise's president and thus separate from the DMC Enterprise itself." Defendants contend that the issue is not whether a corporate president can be a defendant under subsection (3), but whether Day can be, when he is not separate from the enterprise.

Federal cases considering the analogous section under 18 USC § 1962(c) have held that the enterprise must be

different from the person whose racketeering the act was designed to prohibit. *See, e.g., Brittingham v. Mobile Corp., supra; Rae v. Union Bank,* 725 F2d 478 (9th Cir 1984); *U.S. v. Computer Sciences Corp.,* 689 F2d 1181 (4th Cir 1982), *cert den* 459 US 1105 (1983). The court explained the purpose of the subsection in *Brittingham v. Mobil Corp., supra,* 943 F2d at 300:

> "The issue here is not whether defendants have participated in a 'pattern of racketeering activity,' but whether the alleged 'enterprise' is sufficiently distinct from the defendants.
>
> "A § 1962(c) violation requires a finding that the defendant 'person' conducted or participated in the affairs of an 'enterprise' through a pattern of racketeering activity. In *B. F. Hirsch v. Enright Refining Co., Inc.,* 751 F2d 628, 633-34 (3rd Cir. 1984), we held that the 'person' charged with violation of § 1962(c) must be distinct from the 'enterprise.' In addition to noting that the plain language of the statute provides that the person must be 'employed by or associated with' — and therefore separate from — the enterprise, we stated that:
>
>> "One of the Congressional purposes in enacting RICO was to prevent the takeover of legitimate businesses by criminals and corrupt organizations. It is in keeping with that Congressional scheme to orient section 1962(c) toward punishing the infiltrating criminals rather than the legitimate corporation which might be an innocent victim of the racketeering activity in some circumstances.
>
> "*Id.* at 633-34 (citations omitted).
>
> "We reaffirmed this holding in *Petro-Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349 (3rd Cir. 1987), where we noted that '§ 1962(c) was intended to govern only those instances in which an "innocent" or "passive" corporation is victimized by the RICO "persons" and either drained of its own money or used as a passive tool to extract money from third parties.' *Id.* at 1359. In *Petro-Tech,* we extended the *Enright* rule, holding that a corporate 'enterprise' cannot be held vicariously liable for the § 1962(c) violations of its employees, either for aiding and abetting, or under a theory of respondeat superior. We noted that a contrary holding would circumvent the holding in *Enright* by making the 'victim' enterprise liable. We recognized that the enterprise may often benefit from the RICO violations, but

noted that a plaintiff may recover only from the actual violators. *Id.* at n 11."

■■ Plaintiffs do not contend that ORS 166.720(3) was intended to reach prohibited activity that is different from that discussed in *Brittingham v. Mobile Corp., supra*, and we agree with the reasoning there. To allege a claim under subsection (3), plaintiffs must show the existence of two entities: person and enterprise. Here, plaintiffs have alleged one entity. They allege that DMC is an enterprise and that Day is the corporate president of DMC. The alleged racketeering activity was conducted by DMC and Day. However, corporations act only through their officers and agents, 943 F2d at 301, and plaintiffs' allegations do not maintain the distinction between Day and the enterprise that "ensures that RICO sanctions are directed at the persons who conduct the racketeering activity, rather than the enterprise through which the activity is conducted." 943 F2d at 301. The trial court did not err in dismissing plaintiffs' claim under ORS 166.720(3).

Because of our holding, we do not address plaintiffs' final assignment of error.

Affirmed.

**LEESON, J.,** concurring in part; dissenting in part.

I agree with the majority's conclusion that plaintiffs have not stated a claim under the Oregon Racketeer Influenced and Corrupt Organization Act. ORS 166.715 *et seq*. I also agree that plaintiffs have not pleaded a claim for damages under ORS 656.156(2), because their allegations do not meet the test for "deliberate intent."

I part ways with the majority on its analysis of the negligence claim. In my view, *Neher v. Chartier*, 319 Or 417, 879 P2d 156 (1994), is directly applicable and requires the conclusion that ORS 656.018 violates Article I, section 10, of the Oregon Constitution insofar as it eliminates any remedy that nondependent parents of an injured worker might have for the negligent acts of the employer.[1] There are only two

---

[1] The majority's contention that *Leech v. Georgia-Pacific Corp.*, 259 Or 161, 485 P2d 1195 (1971), is relevant to the analysis in this case is misplaced. 133 Or App at 164. In *Leech*, the court disposed of the plaintiff's Article I, section 10, argument in a footnote, observing that that constitutional contention "was not pressed on oral

distinctions between this case and *Neher*, and I do not think that either of them is relevant for purposes of our analysis of the challenge under Article I, section 10. In this case, defendant is the deceased worker's employer. In *Neher*, the defendant was a third party that had allegedly caused the deceased worker's injury. In this case, the statutory source of the immunity is ORS 656.018. Defendant, its officers, employees and directors are immune from tort liability for negligence, because defendant is a complying employer who has satisfied its obligation to provide workers' compensation coverage. In *Neher*, the defendant Tri-Met and its officers, employees and agents, were immune from liability for a third-party claim by the deceased worker's estate, because Tri-Met was a public body within the meaning of ORS 30.265(3) and the injury was covered by workers' compensation law. The Supreme Court's opinion in *Neher* leads me to conclude that neither the statutory source of the immunity nor the defendant's status as the employer or as a third-party public entity is relevant to the question of whether there has been a violation of Article I, section 10.

In *Neher*, the court said that the focus of the analysis under Article I, section 10, is whether the effect of the immunity is to leave the tort plaintiff without any substantial remedy against the responsible party. In that case, as here, the named plaintiff was the personal representative of the deceased worker's estate. There, as here, the action was brought under ORS 30.020(1), the wrongful death statute. The court said that, because the estate was entitled under the Workers' Compensation Law to recover for the cost of burial, ORS 656.204(1), the *estate* of the worker was not left without a remedy. The same is true here. However, the court also said that, in a wrongful death action, the estate is not the only real party in interest. Relying on ORS 30.020(2)(d), which provides that damages that "justly, fairly and reasonably compensate the decedent's * * * parents" may be awarded in a wrongful death action, the court held that such actions are also brought on behalf of surviving parents. The court concluded that the immunity provided by ORS 30.265(3)(a) left

---

argument, and we think it requires no comment here." 259 Or at 167 n 3. Even if *Leech* once aided the majority's analysis, *Neher* is now the controlling authority and we are obliged to follow it.

the decedent's parents, "who otherwise would be entitled to recover under ORS 30.010(2)(d)," wholly without a remedy.

In *Neher*, had the decedent survived her injury, she could not have sued Tri-Met, because of its statutory immunity. Nonetheless, the court held in *Neher* that the worker's parents could recover damages for her wrongful death, because to apply the immunity of ORS 30.265(3)(a) to that circumstance would have left the parents wholly without a remedy, in violation of Article I, section 10. Similarly, in this case, the decedent could not have sued his employer, because of the immunity provided by ORS 656.018. To apply the immunity of that statute to bar the deceased worker's nondependent parents from bringing an action for his wrongful death would leave them wholly without remedy for their injury. I would hold that, to the extent that it prohibits a wrongful death action against a negligent employer by the estate of the deceased worker, ORS 656.018 violates Article I, section 10, of the Oregon Constitution, because it leaves the nondependent parents of a deceased worker wholly without a remedy.[2]

The majority appears to be moved by a concern that to permit this negligence action will "seriously erode — if not destroy — the exclusivity of remedy on which the workers' compensation system depends." 133 Or App at 163. Such is not the case. Under my reading of *Neher*, the only person who would be entitled to bring an action is one who would have been able to bring an action but for the immunity provision and who is not otherwise provided a remedy. Accordingly, I dissent.

---

[2] I do not understand the significance of the majority's distinction between a right to bring a third-party action and the right to sue the employer directly. In both cases, clearly there is no legal bar to *bringing* the action, but in both, the statutory immunity could be raised as a defense.