Argued and submitted September 2, 1994, decision of the Court of Appeals and judgment of the circuit court reversed; case remanded to the circuit court for further proceedings February 2, 1995

Edwin M. ERRAND,
*Petitioner on Review,*

*v.*

CASCADE STEEL ROLLING MILLS, INC.,
an Oregon corporation,
*Respondent on Review.*

(CC CV91283; CA A80487; SC S41195)

888 P2d 544

Sharon C. Stevens, of Callahan and Stevens, Keizer, argued the cause and filed the petition for petitioner on review.

Ronald W. Atwood, of Williams, Zografos, Peck & Atwood, Portland, argued the cause for respondent on review. With him on the briefs was Brad G. Garber.

Robert Wollheim, of Welch, Bruun, Green & Wollheim, Portland, filed a brief on behalf of *amici curiae* Oregon Trial Lawyers Association and Oregon Workers' Compensation Attorneys.

Deborah L. Sather, of Stoel Rives Boley Jones & Grey, Portland, filed a brief on behalf of *amicus curiae* Oregon Self-Insured Association.

Jerald P. Keene, of Roberts, Reinisch, MacKenzie, Healey & Wilson, P.C., Portland, filed a brief on behalf of *amici curiae* Associated Oregon Industries and Oregon Restaurant Association.

VAN HOOMISSEN, J.

Graber, J., dissented and filed an opinion, in which Carson, C. J., joined.

## VAN HOOMISSEN, J.

Plaintiff filed a complaint in circuit court against defendant, his employer, alleging statutory and common law negligence claims and seeking damages for economic losses, past and future medical bills, lost wages, and impairment of earning capacity. The trial court granted defendant's motion for summary judgment on the ground that defendant is immune from liability and that plaintiff's exclusive remedy is under the Workers' Compensation Law. ORS 656.018.[1] The Court of Appeals affirmed. *Errand v. Cascade Steel Rolling Mills, Inc.*, 126 Or App 450, 454-55, 869 P2d 358 (1994). For the reasons that follow, we reverse.

Plaintiff, a worker at defendant's manufacturing plant, had a preexisting condition of chronic infectious paranasal sinusitis that was not caused by his current work experiences or environment. That preexisting condition, which predisposes plaintiff to experience airway irritation, became symptomatic due to his inhalation of substances in the workplace. Plaintiff sought treatment for his symptoms and filed a workers' compensation claim. The insurer denied the claim, explaining that "it does not appear your condition was worsened by or arose out of and in the course of your employment, either by accident or occupational disease." Plaintiff appealed that denial.

---

[1] ORS 656.018 provides in part:

"(1)(a) The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of compensable injuries to the subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such injuries, except as specifically provided otherwise in this chapter.

"* * * * *

"(2) The rights given to a subject worker and the beneficiaries of the subject worker for compensable injuries under this chapter are in lieu of any remedies they might otherwise have for such injuries against the worker's employer under ORS 654.305 to 654.335 or other laws, common law or statute, except to the extent the worker is expressly given the right under this chapter to bring suit against the employer of the worker for an injury."

It is undisputed that plaintiff was a subject worker and defendant was a complying employer for purposes of ORS 656.018.

A referee defined the issue as whether plaintiff's work exposure caused or worsened his chronic infectious paranasal sinusitis or "caused a complex of symptoms that would be recognized in workers' compensation law as a disease." After noting that plaintiff's sinusitis predisposed him to experience airway irritation, the referee found:

"Claimant does not have a reactive airway disease or occupational asthma. He does have transient irritation of the upper respiratory tract and paranasal sinuses as a result of inhalation of substances found in his workplace.

"Claimant's work exposure is not the major cause of his chronic infectious paranasal sinusitis."[2]

---

[2] ORS 656.005(7) provides in part:

"(a) A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

"(A) No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition.

"(B) If a compensable injury combines with a preexisting disease or condition to cause or prolong disability or a need for treatment, the resultant condition is compensable only to the extent the compensable injury is and remains the major contributing cause of the disability or need for treatment.

"(b) 'Compensable injury' does not include:

"(A) Injury to any active participant in assaults or combats which are not connected to the job assignment and which amount to a deviation from customary duties;

"(B) Injury incurred while engaging in or performing, or as the result of engaging in or performing, any recreational or social activities primarily for the worker's personal pleasure; or

"(C) Injury the major contributing cause of which is demonstrated to be by clear and convincing evidence the injured worker's consumption of alcoholic beverages or the unlawful consumption of any controlled substance, unless the employer permitted, encouraged or had actual knowledge of such consumption."

ORS 656.802 provides parallel provisions regarding "occupational disease":

"(1) As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death * * *.

"* * * * *

"(2) The worker must prove that employment conditions were the major contributing cause of the disease or its worsening. Existence of the disease or worsening of a preexisting disease must be established by medical evidence supported by objective findings."

The referee upheld the insurer's denial of the claim. In its final order, the Workers' Compensation Board adopted the referee's order and held that plaintiff had not established that his condition was compensable, because work was not the "major cause" of his condition. Plaintiff did not seek judicial review of the Board's order.

Plaintiff then brought this action in circuit court against his employer, based on inhalation of and exposure to particulates in the workplace, alleging statutory and common law claims. Defendant moved for summary judgment, arguing that plaintiff's exclusive remedy is under the Workers' Compensation Law and that, under ORS 656.018, defendant is immune from liability. The trial court granted defendant's motion. The Court of Appeals affirmed, holding:

> "With certain exceptions not involved here, if the Workers' Compensation Act is applicable, and if the employer has satisfied its obligation to comply with the requirements of the Act, then the employer's liability to the worker for the worker's work-related injury or condition is exclusively under the Act, *and* the Act is also the exclusive remedy for the injured worker. That is one part of the *quid pro quo* that underlies our workers' compensation system; the other part requires the employer to assume liability for work-related injuries without fault.

> "* * * * *

> "The exclusivity of the Act is not limited to claims that are ultimately determined to be compensable." *Errand v. Cascade Steel Rolling Mills, Inc., supra*, 126 Or App at 453-54 (emphasis in original).

Plaintiff argues on review that the exclusivity provisions of ORS 656.018 do not apply because, although his respiratory symptoms occurred in and were caused by the workplace, he did not have a "compensable injury," as defined in the Workers' Compensation Law and, therefore, he is not entitled to compensation for his condition. *See* ORS 656.005(7)(a) (defining "compensable injury"); ORS

---

ORS 656.804 provides:

"An occupational disease, as defined in ORS 656.802, is considered an injury for employees of employers who have come under this chapter, except as otherwise provided in ORS 656.802 to 656.807."

656.018(1) (limiting complying employer's liability to that "arising out of compensable injuries"). From this, plaintiff further argues that the undisputed fact that he was not entitled to compensation under the Workers' Compensation Law demonstrates that his injury did not fall within the exclusivity provision of ORS 656.018. That is, plaintiff is arguing that even if he is a subject worker and defendant is a complying employer, ORS 656.018 does not apply in this case because, as a matter of law, his *condition* is not compensable.

Defendant responds that a mechanical application of the statutory definition of "compensable injury" to ORS 656.018 would defeat the legislative intent behind the exclusivity provision by allowing anyone whose claim is found not to be compensable to sue the employer in a civil action. Defendant asks this court to interpret ORS 656.018 as exclusive and in place of all other liability that an employer either has or might have if the employee's condition in question is "work-related" or "occurring at work." We first turn to the text of ORS 656.018 and to the definition of "compensable injury," ORS 656.005(7)(a), in the context of the Workers' Compensation Law, to discern whether the legislature intended that a civil claim such as plaintiff's be barred. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (to discern intent of legislature, court first examines the text and context of statute).

ORS 656.018(1) provides that a complying employer's liability "is exclusive and in place of all other liability arising out of *compensable injuries* to the subject workers * * *." ORS 656.018(2) likewise provides that the "rights given to a subject worker * * * for *compensable injuries* under this chapter are in lieu of any remedies they might otherwise have for such injuries against the worker's employer under ORS 654.305 to 654.335 or other laws, common law or statute, [except as otherwise provided in the Workers' Compensation Law]." (Emphasis added.)

ORS 656.003 provides that, "[e]xcept where the context otherwise requires, the definitions given in this chapter govern its construction." We turn to the issue whether the statutory definition of compensable injury applies to ORS 656.018. The wording of ORS 656.005(7)(a)(A), that "[n]o

injury or disease is compensable as a consequence of a compensable injury," and the language of ORS 656.005(7)(a)(B), that certain conditions may be "compensable only to the extent the compensable injury is and remains the major contributing cause," provide, in essence, that certain injuries, diseases, or conditions, although related to work, may *not* be "compensable" under certain circumstances, *i.e.*, unless the "major contributing cause" criteria found in subparagraph (A) or (B) are met.[3]

From the foregoing description of the text of the definition of "compensable injury" in ORS 656.005(7)(a), it appears to us that the legislature was using the word "compensable" to convey different meanings. In the main part of ORS 656.005(7)(a), the "compensable injury" referred to may be simply an "accidental injury" "arising out of and in the course of employment." However, the *limitations* set forth in subparagraphs (A) and (B) of ORS 656.005(7)(a) make it clear that one who suffers an "accidental injury" "arising out of and in the course of employment" as described in paragraph (a) nevertheless may have an injury that is not "compensable," unless the "major contributing cause" test has been met. ORS 656.005(7)(a)(A), (B); *see also SAIF v. Drews*, 318 Or 1, 8-9, 860 P2d 254 (1993) ("compensable injury" encompasses an application of the criteria found in ORS 656.005(7)(a), including the limitations found in subparagraphs (A) and (B) of that statute, in making initial determination of compensability).

■ The question is whether the legislature intended the exclusivity provision of ORS 656.018 to refer to some definition of compensable injury other than that set forth in ORS

---

[3] In *SAIF v. Drews*, 318 Or 1, 8, 860 P2d 254 (1993), this court stated: " 'Compensable injury' encompasses an application of the criteria found in ORS 656.005(7)(a), including the limitations found in subparagraphs (A) and (B) of that statute, in making an initial determination of compensability." Defendant here argues that "this court should interpret the word 'compensable' in ORS 656.018(1), as it recently did in *SAIF v. Drews, supra*, 318 Or at 8-9, to mean 'accidental.' " Defendant misreads this court's ruling in *Drews*. In *Drews*, this court did not find that the words "compensable" and "accidental" were *interchangeable as used in* ORS 656.005(7)(a). In setting forth the test for applying the definition of "compensable injury" in the context of ORS 656.308, this court in *Drews* described the injury discussed in the first part of ORS 656.005(7)(a) as an "accidental injury." However, this court went on to make it clear that the "accidental injury" so described was *not* compensable, unless *the limitations* in ORS 656.005(7)(a)(A) or (B), if applicable, were satisfied. *Id.* at 8-9.

656.005(7)(a), as qualified and limited by subparagraphs (A) and (B). *Cf. Dethlefs v. Hyster Co.*, 295 Or 298, 309-10 & n 10, 667 P2d 487 (1983) (in cases decided before the addition of subparagraphs (A) and (B) to ORS 656.005(7)(a), court indicated that legislative intent behind Workers' Compensation Law was to avoid common law litigation and to grant employers immunity against liability for compensable injuries, but also recognized that it "is arguable that an action for damages may be maintained against an employer of the worker if a disease or injury is not 'compensable' ").

The definition of "compensable injury" found in ORS 656.005(7)(a), which includes the limitations found in subparagraphs (A) and (B), governs statutory construction of that term as used in the Workers' Compensation Law "[e]xcept where the context otherwise requires." ORS 656.003; *see also Astleford v. SAIF*, 319 Or 225, 232-33, 874 P2d 1329 (1994) (under ORS 656.003, a given statutory definition does not apply when the context, which includes the structure and purpose of the workers' compensation system as a whole, demonstrates that the use of the definition would be inappropriate); *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611 (use of same term throughout a statute generally indicates that the term has the same meaning throughout the statute).

In plaintiff's workers' compensation case, the referee denied compensation because plaintiff's symptoms were not the major contributing cause of his condition. Under ORS 656.802 (defining occupational disease), ORS 656.804 (occupational disease considered "injury" for purposes of Workers' Compensation Law), ORS 656.005(7)(a) (as interpreted by this court in *Drews*), and the facts as found by the referee and adopted by the Board, it has been established that plaintiff did not have the right to be compensated under the Workers' Compensation Law for the injury he suffered, as that term is defined and used in ORS 656.005(7)(a), in the light of the "major contributing cause" limitations found in ORS 656.005(7)(a)(A) and (B). The exclusivity provision of ORS 656.018 specifies that the liability of employers under the workers' compensation scheme "is exclusive and in place of *all other liability* arising out of compensable injuries to the subject workers[.]" ORS 656.018(1)(a) (emphasis added). In

plaintiff's workers' compensation case, it was established that the employer *had no liability* to compensate plaintiff under the Workers' Compensation Law. By providing for an employer's freedom from "other" liability, it may be inferred from the exclusivity provision that there must exist, as a predicate for that freedom, some actual liability under the Workers' Compensation Law before the exclusivity provision may protect the employer from "all other liability." Thus, the text of the exclusivity provision, specifically its use of the term "liability," further supports the conclusion that the statutory definition of "compensable injury" applies to ORS 656.018.

■    We turn to the question of what the definition of "compensable injury" means. The dissent relies on the fact that specific types of injuries are excluded under ORS 656.005(7)*(b)*, quoted *supra* at note 2, to try to demonstrate that the context requires that ORS 656.005(7)(a)'s definition of "compensable injury" covers every work-related injury that ORS 656.005(7)(b) does not exclude. The dissent argues, in effect, that the definition of "compensable injury" stops after the words "or resulting in disability or death" in ORS 656.005(7)(a), and that the balance of the text merely establishes conditions that may lead to non-payment of compensation for what otherwise is a compensable injury. We disagree. To the extent that the dissent is suggesting that unless something is specifically codified as "not a compensable injury" for purposes of ORS 656.005(7)(b), it therefore *is* a compensable injury for purposes of the exclusivity provision, the context certainly does not demonstrate that this is the only permissible construction of the statutes.[4] The *entire text* of the statute is the legislature's definition of "compensable injury." The *definition includes* the limitations in subparagraphs (A) and (B). That is, unless the major contributing cause standard is satisfied, consequential conditions (subparagraph (A)) and resultant conditions (subparagraph (B)) are not "compensable injuries." When the legislature, in ORS 656.005(7)(a)(A), declares that "[n]o injury or disease is

---

[4] Although both ORS 656.005(7)(a) and (b) are part of the context of ORS 656.018, ORS 656.005(a) is more helpful to a determination of what ORS 656.018 means, because it states what a "compensable injury" *is*, while ORS 656.005(7)(b) only states what a "compensable injury" *is not*, at least under the described conditions.

compensable" as a consequential condition, absent compliance with the major contributing cause proof standard, it is *defining* a compensable injury, not merely announcing further conditions under which a compensable injury will be paid. We apply the entire text, not only one part, of subsection (7)(a) as the relevant definition.

The dissent says that, if the legislature intended the "major contributing cause" limitations to apply to "compensable injuries" as used in the exclusivity provision, it would have put those limitations in ORS 656.005(7)(b) rather than in ORS 656.005(7)*(a)*(A) and (B). The context does not necessarily lead to this conclusion. ORS 656.005(7)(b) is part of the context of ORS 656.005(7)(a). The exclusions in ORS 656.005(7)(b) do not demonstrate that ORS 656.005(7)(a)(A) and (B) are merely limitations on "a subclass of 'compensable injuries' for which workers will not receive benefits," as the dissent asserts. 320 Or at 528. The conditions described in subparagraphs (7)(a)(A) and (B) are compensable injuries if their major contributing cause is a compensable injury, whereas the conditions described in subsection (7)(b) are not compensable injuries despite the existence of a causal link to an injury described in (7)(a). That distinction explains why the legislature defined the conditions under which "consequential" or "resultant" conditions are compensable injuries in ORS 656.005(7)(a)(A) and (B), rather than in the context of the conditions categorically excluded from "compensable injury" under ORS 656.005(7)(b).

The foregoing discussion explains why, in our view, plaintiff's argument about the scope of the immunity provided in ORS 656.018 appears more likely to be correct than does the argument of defendant. That is not to say, however, that defendant's construction of the relevant statutes is not plausible also. We conclude that, although the text and context of ORS 656.018 tend to support the conclusion that the legislature did not intend the exclusivity provision of that statute to bar a civil action where an injury has been determined not to be compensable because it was not a "major contributing cause" of a condition, the text and context of the relevant statutes do not settle the issue. We therefore turn to the legislative history of ORS 656.018 and ORS 656.005(7)(a)

to aid in discerning the intent of the legislature. *PGE v. Bureau of Labor and Industries, supra*, 317 Or at 610.

The exclusivity provision of ORS 656.018 was amended essentially to its present form in 1977. *See* Or Laws 1977, ch 514, § 1. We have found no legislative history that indicates that the 1977 amendments were intended to alter the scope of the exclusivity provision in any way relevant to the issue at hand. Before 1977, the relevant provisions were in essentially the same form as when they were enacted in 1965, when a major overhaul of the Workers' Compensation Law was undertaken, moving from elective to compulsory workers' compensation coverage:

> "Every employer who satisfies the duty required by subsection (1) of section 5 of this 1965 Act is relieved of all other liability for compensable injuries to his subject workmen, the workmen's beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries, except as specifically provided otherwise in ORS 656.002 to 656.590." Or Laws 1965, ch 285, § 6(1).

The 1965 Workers' Compensation Law also introduced for the first time a statutory definition of "compensable injury":

> "A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means." Or Laws 1965, ch 285, § 1(21).

We have examined the legislative history of the 1965 enactments and the later amendments to the exclusivity provision and the definition of "compensable injury" before 1990, and have found nothing that sheds light on the issue at hand. However, in *Cope v. West American Ins. Co.*, 309 Or 232, 236, 785 P2d 1050 (1990), a case decided before the 1990 amendments to ORS 656.005(7)(a), this court indicated that the statutory definition of "compensable injury" found in ORS 656.005(7)(a) applied to that term as it is used in the exclusivity provision of ORS 656.018(1)(a). *See Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992) (this court's interpretation of a statute becomes a part of the statute as if written into it at the time of its enactment).

The question is whether the 1990 legislature intended that its amended definition of "compensable injury," found in the current version of ORS 656.005(7)(a), would apply to the exclusivity provisions of ORS 656.018. If the legislature intended the new definition of "compensable injury" to apply, then the exclusivity provision would apply when the "accidental injury" "arising out of and in the course of employment" was the "major contributing cause" of a resulting or consequential condition requiring medical services. ORS 656.005(7)(a)(A), (B).

We turn to the history of the 1990 amendments to the Workers' Compensation Law, in which the definition of "compensable injury" was amended to include the "major contributing cause" limitations.[5] It is clear from the text and the legislative history of the 1990 amendments that those changes were intended to have the effect of reducing the number of workers who could recover for work-related injuries under the workers' compensation system. *See* Or Laws 1990, ch 2, § 3 (Spec. Sess.) (changing requirements regarding objective findings and compensable injuries); Exhibit E, Joint Interim Special Committee on Workers' Compensation, May 5, 1990 (fiscal analysis showing cost savings expected from reducing number of compensable injuries); Joint Interim Special Committee on Workers' Compensation, May 3, 1990, Tape 7, Side B (testimony from various witnesses regarding fewer compensable injuries).

The legislative history of the 1990 amendments to the definition of compensable injury in ORS 656.005(7)(a) reveals that the joint committee reviewing the amendments considered the potential impact of the change in compensability on the exclusivity provision of the Workers' Compensation Law:

CHARLES WILLIAMSON, OREGON TRIAL LAWYERS ASSOCIATION: "* * * I think you may be overlooking a situation here where a worker is having a coffee break or a cigarette break on the loading dock and he gets run over by a forklift or some other negligence. Any worker that is injured

---

[5] The parallel provisions of ORS 656.802 (occupational disease) were amended at the same time to state the "major contributing cause" standard for occupational diseases. Or Laws 1990, ch 2, § 43 (Spec. Sess.).

through the fault of another, *if it's not going to be compensable, he's going to have a lawsuit against the employer,* and the employee that was negligent. And so you're going to be taking cases out of the workers' comp system and putting them into the court system. Not completely, but just when it's someone else's fault, you will take those cases out of the workers' comp system."

"\* \* \* \* \*"

REP. EDMUNDSON: "The — let's use for example the major cause test. If work was, *if something that happened at work was a material factor in an injury condition, but not the major factor, it would not be a compensable claim under the major cause test. So it wouldn't be covered under workers' comp laws.* But if that material contribution at work was some negligent act, by a coworker or the employer failing to clean up the oil on the factory floor, then *that negligence would be the grounds of a lawsuit against the employer* for premises liability or negligent care and control of his workforce. The Court of Appeals ruled real recently that even though something happens at work, an injury happens at work, if it's not covered under workers' comp law, then all other civil remedies are available because there is no exclusive protection under the act. So *every time we make a work-related condition not compensable, we are exposing the employer to civil liability.*" Joint Interim Special Committee on Workers' Compensation, May 3, 1990, Tape 7, Side B (emphasis added).

"\* \* \* \* \*"

REP. EDMUNDSON: *"How about the earlier assertion that if an on-the-job condition does not qualify as a compensable claim, the employer would then be subject to liability for civil action?"*

JERRY KEENE, WORKERS' COMPENSATION DEFENSE ATTORNEYS: "I need to see that case because *my understanding of the law is to the contrary,* and in fact I've won a few cases to the contrary, so I would need to see what you're talking about. I haven't seen that case yet."

REP. EDMUNDSON: "Well, my principal point, Jerry, is if an injury is not compensable under the workers' comp laws — "

KEENE: " — civil liability — "

REP. EDMUNDSON: " — then, *you would agree that there is no exclusive remedy under the comp laws* — "

KEENE: "— No, that's not true —"

REP. EDMUNDSON: "— *and therefore liability is, would have to be litigated as any other type of injury.*"

KEENE: "*Exclusive remedy applies so long as it is work-related,* or within, for example, we've had decisions where an occupational disease was proven not to be the major contributing cause but was still partially work-related, it fell outside civil liability because exclusive liability applied. And whether that's a good result or not, I'm not saying. But I don't agree with your assessment of that blanket statement of the law."

REP. EDMUNDSON: "Well, I, Mr. Chair, Madame Chair, I just want to direct Mr. Keene to section 18 of the act *[ORS 656.018], which says the liability for any employer who satisfies the duty is exclusive and in place of all other liability arising out of compensable injuries to subject workers. Therefore, if the injury is not compensable but is yet to a subject worker, I would submit that section 18 does not protect that employer from liability.*"

KEENE: "In the cases I've been involved in, they interpreted that as *potentially* compensable."

REP. EDMUNDSON: "Well, if it was clearly not compensable, would your answer change?"

KEENE: "Once it was litigated and turned out not to be? No. Because that's what happened in my case."

SEN. SHOEMAKER: "Chairman, I want to return to the hypothetical that Representative Mannix posed to an earlier witness and I believe —"

KEENE: "They didn't appeal, by the way." Joint Interim Special Committee on Workers' Compensation, May 3, 1990, Tape 8, Side B (emphasis added).

Not surprisingly, that legislative history indicates that Williamson, a witness on behalf of the claimant's bar, essentially argued what plaintiff is arguing in the present case, and that Keene, a witness on behalf of the insurance defense bar, essentially argued what defendant is arguing in the present case. However, the exchanges quoted above also indicate that Representative Edmundson, one of the legislative committee members, believed that just as the definition of "compensable injury" narrowed, so also the exclusivity provision narrowed, because the new definition would apply to the term "compensable injuries" as used in ORS 656.018.

During the House floor debate, Representative Edmundson made similar statements:

"[Speaking of the major contributing cause limitation] That means that if an older worker for example has a heart attack and its not the major cause and they don't get coverage, they may die, and their heirs or their family could have a lawsuit against the employer that is now presently is not allowed under Oregon law. The federal courts have made it pretty clear that — even something that happens at work — if it's not compensable under the workers' comp laws, the employee can sue the employer. And I don't think that business has really thought this one through. I predict, and as you all know I practice this law, I predict we're going to have some lawsuits that are going to surprise some employers when they find out they don't have insurance coverage for them. So, that's the downside on that, that I don't think — that I know some insurance people are a little concerned about that too." House Floor Debate, May 7, 1990, Tape 2, Side A.

Moreover, during that floor debate, Representative Dwyer commented:

"Representative Edmundson said it may subject a small employer, or an employer, to tort action, and I'm inclined to agree that you can't conceivably have an exclusive remedy that is no remedy at all and claim refuge under it." *Id.*, Tape 3, Side A.

No other legislator voiced disagreement with Representative Edmundson's and Representative Dwyer's conclusions during floor debate, and neither the amended definition of "compensable injury" nor the exclusivity provision of ORS 656.018(1) were further amended to address the issue.

We conclude that this legislative history supports a conclusion that the legislature intended the definition of "compensable injury" as amended in 1990 to apply in the context of the exclusivity provision of ORS 656.018(1).

Oregon courts long have recognized that the workers' compensation system involves a trade-off, offering certain advantages, as well as disadvantages, to both employers and employees. *See, e.g., Hale v. Port of Portland,* 308 Or 508, 521-22, 783 P2d 506 (1989) ("The scheme penalized some members of both camps — those plaintiffs

who could prove actionable negligence of their employers, and so obtain damages beyond their medical expenses, and other employers who could defeat liability either because they had not been negligent or because they could show the worker was guilty of contributory negligence or assumption of risk."); *McGarrah v. SAIF*, 296 Or 145, 160, 675 P2d 159 (1983) ("Workers' compensation systems are founded on political compromise."). Undoubtedly, the 1990 legislature changed the nature of the trade-off when it narrowed the definition of "compensable injury" in ORS 656.005(7)(a) to reduce the number of injuries that would be compensated under the Workers' Compensation Law. The history available to us does not, however, justify a conclusion that the 1990 legislature intended that change to work solely in favor of employers, thus relieving employers of liability while keeping the workers' end of the bargain unchanged.[6]

■    In sum, we conclude that the 1990 legislature intended the present definition of "compensable injury" in ORS 656.005(7)(a) to apply to ORS 656.018, because that result is consistent with the text and context of those statutes, because the context does not otherwise require, ORS 656.003, and because the legislative history supports that conclusion. Thus, we conclude that the exclusivity provision of ORS 656.018 does not provide defendant with immunity from plaintiff's civil claims here, because plaintiff did not have a "compensable injury" within the meaning of ORS 656.005(7)(a) and ORS 656.018(1).[7]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.

---

[6] Because we decide this case on statutory grounds, we need not consider plaintiff's arguments based on Article I, section 10, of the Oregon Constitution ("every man shall have remedy by due course of law for injury done in his person, property, or reputation").

[7] Defendant expresses concern that interpreting the exclusivity provision in a manner that does not preclude civil actions for noncompensable conditions could lead injured workers to bypass the workers' compensation system entirely in order to take their cases before juries and that, had the legislature sought to provide workers with such an election to proceed outside the Workers' Compensation Law, such a policy choice would be evident from the law itself. Nothing in our decision here supports a conclusion that workers may elect to bypass the workers' compensation system. In view of the procedural posture of this case, we do not decide whether a Board determination that plaintiff's claim is not a compensable injury is a prerequisite to this action in circuit court.

**GRABER, J.,** dissenting.

I dissent. In my view, the majority misreads the applicable statutes and, in doing so, undermines some of the fundamental purposes of the Workers' Compensation Law.

This case involves an application of the exclusivity provision of the Workers' Compensation Law, ORS 656.018, which provides in part:

> "(1)(a)   The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of compensable injuries to the subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such injuries, except as specifically provided otherwise in this chapter.
>
> "* * * * *
>
> "(2)   The rights given to a subject worker and the beneficiaries of the subject worker for compensable injuries under this chapter are in lieu of any remedies they might otherwise have for such injuries against the worker's employer under ORS 654.305 to 654.335 or other laws, common law or statute, except to the extent the worker is expressly given the right under this chapter to bring suit against the employer of the worker for an injury."

On review, plaintiff argues that the exclusivity provision does not bar a civil action against his employer because, although plaintiff's symptoms arose in the course and scope of his employment, plaintiff does not have a "compensable injury" as defined in ORS 656.005(7)(a). The majority agrees with plaintiff's argument.

Plaintiff and the majority are wrong. Plaintiff has a "compensable injury" within the meaning of ORS 656.005-(7)(a), even though he did not carry the burden of proving that he should receive benefits. Plaintiff and the majority blur the distinction between "compensable injuries" (the scope of the Workers' Compensation Law) and "compensation" (entitlement to benefits). That distinction has been in the statutory scheme from its inception and, until now, the exclusivity

provision has been construed to cover all "compensable injuries," even those that do not result in the payment of "compensation."

This court has established a method of construing statutes, which applies to the provisions in question. Our overriding aim is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). First, we examine the text and context of the statute. *Id.* at 610-11. When reading the text of a statute, certain principles apply, including the principle that the text means what this court's prior interpretation thereof states. *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992). The context of a statute includes its historical development. *Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994). If the meaning of a statute is unclear from the text and context, the court looks to legislative history and then, if the meaning still is unclear, to "general maxims of statutory construction," to determine the legislature's intent. *PGE*, 317 Or at 611-12.

At present, ORS 656.005(7)(a) defines "compensable injury." It provides, as relevant here:

"A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence, supported by objective findings, subject to the following limitations:

"(A) No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition.

"(B) If a compensable injury combines with a preexisting disease or condition to cause or prolong disability or a need for treatment, the resultant condition is compensable only to the extent the compensable injury is and remains the major contributing cause of the disability or need for treatment."

ORS 656.005(7)(a) supplies a two-step analysis. The *first* step is to decide whether a worker's injury falls within

the definition — *i.e.*, whether the worker's injury is a "compensable injury." *If* the workers' injury is a "compensable injury," *then* the second step is to take into consideration the "limitations" in subparagraphs (A) and (B). Those subparagraphs describe a subclass of "compensable injuries" for which workers will not receive benefits. In effect, subparagraphs (A) and (B) say that, even if a worker has a "compensable injury," the worker must prove that the "compensable injury" should be compensated; the worker must establish that the compensable injury in fact caused the harm complained of. Either the worker has a compensable injury for which the worker can receive benefits, or the worker has a compensable injury for which the worker can receive no benefits. Either way, however, every injury that is "an accidental injury * * * arising out of and in the course of employment" is a "compensable injury," no matter how subparagraphs (A) and (B) affect the workers' ability to collect benefits.[1]

The foregoing reading of ORS 656.005(7)(a) is based on the plain grammar, structure, and logic of the paragraph. That reading is even clearer when that paragraph is contrasted to ORS 656.005(7)(b). ORS 656.005(7)(b) provides:

" '*Compensable injury*' *does not include*:

"(A)  Injury to any active participant in assaults or combats which are not connected to the job assignment and which amount to a deviation from customary duties;

"(B)  Injury incurred while engaging in or performing, or as the result of engaging in or performing, any recreational or social activities primarily for the worker's personal pleasure; or

---

[1] The majority argues that this court recognized a more limited definition of "compensable injury" in *SAIF v. Drews*, 318 Or 1, 8, 860 P2d 254 (1993). 320 Or at 516 n 3. The majority is wrong, for three reasons. First, the majority takes the sentence that it quotes out of context. The majority omits the cautionary sentence that limited the court's discussion to the narrow question presented: "As we interpret ORS 656.308(1) and 656.005(7)(a) together, they work in this case as follows[.]" *Drews*, 318 Or at 8. Second, and relatedly, *Drews* did not decide the issue that we must decide today. In *Drews*, this court was not faced with the question that we consider here, of defining the entire range of "compensable injuries."

Third, in its discussion of *Drews*, as in the remainder of the opinion, the majority makes the mistake of freely interchanging the distinct concepts of "compensable injury," "compensable," "compensation," and "compensated."

"(C) Injury the major contributing cause of which is demonstrated to be by clear and convincing evidence the injured worker's consumption of alcoholic beverages or the unlawful consumption of any controlled substance, unless the employer permitted, encouraged or had actual knowledge of such consumption." (Emphasis added.)

That is, paragraph (b) contains a list of *exclusions from the definition of "compensable injury."* By contrast, in ORS 656.005(7)(a), subparagraphs (A) and (B) are worded as "limitations" on what kinds of "compensable injuries" are "compensable" (that is, entitling the worker to receive benefits). Subparagraphs (A) and (B) limit the "compensable injuries" that may be "compensated" to those compensable injuries that the worker can prove under a specified standard. They are not, however, *excluded* from the definition of "compensable injury." For the purposes of the Workers' Compensation Law, the legislature has defined what *is* a "compensable injury" in ORS 656.005(7)(a) and what *is not* a "compensable injury" in 656.005(7)(b). When the legislature uses different terms in different sections of the same statute, it is deemed to do so intentionally, and we give effect to the difference. *See PGE*, 317 Or at 611 (stating general principle). Here, the majority has failed to give effect to the distinction between exclusions from the definition of "compensable injury" (ORS 656.005(7)(b)) and limitations on benefits payable for a "compensable injury" (ORS 656.005(7)(a)(A) and (B)).

In short, ORS 656.005(7)(a) simply recognizes that some "compensable injuries" will not in fact be compensated. We next must examine ORS 656.018. The pertinent part of ORS 656.018 provides that "[t]he liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability *arising out of compensable injuries* to the subject workers." (Emphasis added.) The phrase that we are called on to interpret is the emphasized one.

The wording of that phrase covers *all* "compensable injuries" by its plain terms; it is not limited to those "compensable injuries" for which benefits are paid. The context of ORS 656.018 likewise supports an expansive reading. The context includes the policy statement in the Workers' Compensation Law, codified at ORS 656.012. ORS 656.012 suggests that the exclusivity provision should apply to all injuries

that arise in the course and scope of employment. The legislature expressed its decision to reduce litigation, ORS 656.012(2)(b), and to expedite resolution of claims, ORS 656.012(2)(c). Those legislative decisions resulted from the legislature's finding that court procedures concerning injuries arising in the course and scope of employment lead to unnecessarily "long and costly litigation" that is detrimental to the economic welfare of society. ORS 656.012(1)(b).

Another principle comes into play in this case. As noted above, when this court construes a statute, that construction becomes part of the statute construed. This court has construed the exclusivity provision of the Workers' Compensation Law, which has remained essentially intact since enactment in 1913, to cover all work-related events unless a specific statutory exception applies (such as the exception for willful and unprovoked aggression).

In *Martelli v. R.A. Chambers and Associates*, 310 Or 529, 533-35, 800 P2d 766 (1990), this court discussed the history of the Workers' Compensation Law and of the exclusivity provision:

"Oregon's Workers' Compensation Law first came into being as an innovation adopted legislatively in 1913. Its original form included direct antecedents of present statutory provisions * * *. Oregon Laws 1913, chapter 112, section 12, in part provided:

" '[T]he right to receive such sum or sums [as workers' compensation] shall be in lieu of all claims against his employer on account of such injury or death except as hereinafter specially provided.'

"* * * * *

"In return for immunity granted to his employer, the worker injured in the course of employment, and in a way defined by that act, was guaranteed compensation, regardless whether a fault or neglect on the part of the employer caused the injury. * * *

"* * * * *

"* * * [T]he compensation law was extensively revised in 1965 * * *. The immunity of an employer from any worker's claims, other than for workers' compensation, was continued in section 6 of the 1965 Act, as worded in the 1913 Act * * * and now phrased in modern terms, in ORS 656.018(1) * * *."

In *Olds v. Olds*, 88 Or 209, 213-14, 171 P 1046 (1918), the court held that the exclusivity provision of the 1913 Workers' Compensation Law "confers a special privilege upon an employer, thereby releasing him from the common-law liability to respond in damages for a personal injury that has been caused by his negligence, unless he formally renounces the benefits thus bestowed." That rule was restated in *Reynolds et al v. Harbert et al*, 232 Or 586, 591, 375 P2d 245 (1962); "[i]t is our conclusion that the statutory scheme was intended to provide that *a workman covered by Chapter 656* must accept the benefits thereof as his exclusive remedy except in the enumerated situations mentioned in the statute." (Emphasis added.)[2] *See also Bigby v. Pelican Bay Lbr. Co.*, 173 Or 682, 689, 147 P2d 199 (1944) ("When a workman has become subject to the act he can not recover from his employer for injuries sustained by him, unless the facts give rise to one of the exceptions specified in the act."); *Ellis v. Fallert et al*, 209 Or 406, 413-14, 407 P2d 283 (1957) ("The Oregon Workmen's Compensation Act offers compensation to workmen who are within its purview for negligent and for non-negligent injuries and provides that such compensation is 'in lieu *of all claims* against his employer' except as provided * * *. [T]he remedy under the act is exclusive." (emphasis in original)); *Shoemaker v. Johnson*, 241 Or 511, 519, 407 P2d 257 (1965) ("the rights and remedies provided by the act are exclusive"). In some of those cases, such as *Bigby*, this court recognized explicitly that exclusivity barred the claim even though the plaintiff could obtain nothing under the workers' compensation scheme. *Bigby*, 173 Or at 685-92.

When the legislature "continued" the exclusivity provision by simply updating its wording in 1965, the legislature effectively re-enacted the 1913 statute, with knowledge of how that statute had been interpreted by this court. *See Billings v. State Ind. Acc. Com.*, 225 Or 52, 56, 357 P2d 276 (1960) (this court assumes that, when the legislature re-enacts a section of a statute, it does so with knowledge of prior rulings by this court construing that statute).[3]

---

[2] The statutory exceptions included willful and unprovoked aggression, for example. ORS 656.156 (1961).

[3] Before 1965, the Workers' Compensation Law contained no separate defini-

This court has continued to read the post-1965 exclusivity provision to apply to all work-related injuries. Those interpretations are part of ORS 656.018 in its post-1965 form. *See Stephens*, 314 Or at 350 n 6 (stating principle).

In *Leech v. Georgia-Pacific Corp.*, 259 Or 161, 485 P2d 1195 (1971), this court concluded that the plaintiff, a dependent child of a deceased employee, was barred by the exclusivity provision of the workers' compensation statutes from bringing a civil action. In reaching that conclusion, the court stated:

> "Subsection (1) [of ORS 656.018], however, makes it clear that * * * *it provides for the employer's immunity from actions by workmen*, their beneficiaries, 'and anyone otherwise entitled to recover damages from the employer on account of such injuries, * * *.' This provision indicates * * * that the legislature intended the remedy provided by compensation to be exclusive and that *complying employers are not to be subject to negligence actions by persons omitted from the compensation benefit schedules*." 259 Or at 165-66 (emphasis added).

The court held that the rationale of *Bigby* survived the 1965 amendments to the workers' compensation statutes and that exclusivity continued to bar claims related to on-the-job events even for those plaintiffs who could obtain no workers' compensation benefits. *Id.* at 164-66.

In *Duk Hwan Chung v. Fred Meyer, Inc.*, 276 Or 809, 556 P2d 683 (1976), a worker argued that the exclusivity provision should not control, because the employer had acted with the deliberate intention of causing injury or death to the employee; therefore, one of the statutory exceptions to the exclusivity provision applied. This court concluded that there was no evidence to suggest that the employer had acted with the deliberate intention to injure the employee or someone else, and it affirmed the trial court's grant of summary

tion of "compensable injury." Rather, from 1913 to 1965, the definition was contained within the applicable exclusivity provision. From 1913 until 1965, the exclusivity provision applied to any employee "who * * * sustains an accidental injury * * * arising out of and in the course of his employment." *See, e.g.*, ORS 656.152 (1963) (so providing). That is the same phrase used in ORS 656.005(7)(a) to define a "compensable injury." The scope of "compensable injury" covered under the Workers' Compensation Law has always been the same; since 1913, it has applied to accidental injuries arising in the course and scope of employment.

judgment in the employer's favor. 276 Or at 813-14. The court noted that "[t]he Workmen's Compensation Law provides the sole and exclusive remedy for injuries sustained by a workman in the course and scope of his employment when the employer is subject to and fully complying with the provisions of the Act, unless the facts give rise to one of the exceptions specified in the Act." *Id.* at 812. *See also Nicholson v. Blachly*, 305 Or 578, 581, 753 P2d 955 (1988) ("The exclusive remedy of injured employes against their employers for injuries suffered in the course and scope of employment is to receive workers' compensation benefits.").

This court has construed ORS 656.018 and its predecessors consistently to grant immunity with respect to all accidental injuries that arise in the course and scope of employment, *i.e.*, all "compensable injuries." At the same time, it always has been true that a worker can sustain a compensable injury (on-the-job event) but collect no compensation (benefits). Over the years, this court has recognized that fact in three categories of cases.

One category of such cases recognizes that a worker can sustain an on-the-job injury but collect no benefits due to an extrinsic reason, such as untimeliness of the claim. *Rohde v. State Industrial Acc. Com.*, 108 Or 426, 217 P 627 (1923), is the earliest example. In *Rohde*, this court held that a worker who suffered an accidental injury in the course and scope of employment, but who failed to adhere to the procedural requirements of the statutes, was not entitled to relief. The court stated:

> "The case, like so many other accidents, presents pitiable features, but whosoever claims under the statute must bring himself within its terms. This the claimant has not done in this instance, and as a matter of law he is not entitled to relief in these proceedings." 108 Or at 441.

The court never has deviated from that holding and has restated it repeatedly. *See, e.g., Dragicevic v. State Industrial Acc. Com.*, 112 Or 569, 571, 230 P 354 (1924) (court will not "entertain" claim that is untimely filed); *Rosell v. State Ind. Acc. Com.*, 164 Or 173, 192, 95 P2d 726 (1940) (same); *Landauer v. State Ind. Acc. Com.*, 175 Or 418, 421, 154 P2d 189 (1944) (same); *Johnson v. Compensation Department*, 246 Or 449, 452, 425 P2d 496 (1967) (same); *Colvin v.*

*Industrial Indemnity*, 301 Or 743, 748, 725 P2d 356 (1986) ("a claimant may not avoid the notice requirements if the [employer] has clear procedures for reporting accidents and injuries and the employe knows or should know of and is able to follow the procedures, but does not").

A second category of cases recognizes that a worker can sustain an on-the-job injury but collect no benefits due to an intrinsic reason, such as failure to sustain the applicable burden of proof. *Vale v. State Ind. Acc. Com.*, 160 Or 569, 86 P2d 956 (1939), is the earliest example of a case in this second category. In *Vale*, the plaintiff, survivor of a deceased worker, claimed that the worker's death was caused by an accident arising in the course and scope of the worker's employment. The plaintiff argued that the worker's death had resulted from contaminated food that the employer had provided to the worker. The court stated:

> "In view of the vague character of the evidence which furnished the hypothesis for the medical testimony * * * we are constrained to hold that the plaintiff has failed to sustain the burden of proving that the decedent's death was caused by contaminated food furnished by his employers." 160 Or at 577.

Again, the court never has deviated from that holding and has restated it repeatedly. *See, e.g., McKay v. State Ind. Acc. Com.*, 161 Or 191, 200, 87 P2d 202 (1939) ("there is no evidence [that worker's being struck by lightening in the course and scope of employment resulted in] injury to the decedent's heart. It is a mere possibility lacking proof"); *Dimitroff v. State Ind. Acc Com.*, 209 Or 316, 323, 306 P2d 398 (1957) ("We have repeatedly held that a claimant under the Act has the burden of proof to show that he is entitled to compensation."); *Grandell v. Roseburg Lbr. Co.*, 251 Or 88, 91, 444 P2d 944 (1968) (upholding denial of benefits to worker because "work activity was not a material contributing factor in producing his heart attack"); *Marston v. Compensation Department*, 252 Or 640, 644, 452 P2d 311 (1969) ("[s]ince there is a total lack of medical testimony that the bumping of claimant's head either caused or contributed to his condition, there is no evidence to support [an award of compensation]"); *Weller v. Union Carbide*, 288 Or 27, 30, 602 P2d 259 (1979) (worker failed to offer sufficient evidence to

"establish * * * a worsening of the underlying disease"); *Harris v. SAIF*, 292 Or 683, 689, 642 P2d 1147 (1982) (in order to collect under the Workers' Compensation Law, claimant "has the burden of proving that he is so disabled").

A third category of cases recognizes that a worker can sustain an on-the-job injury but collect no benefits due to statutory limits on the nature of benefits payable. *Leech v. Georgia-Pacific Corp.* is an example. In that case, a person (a dependent child of a deceased worker) was omitted from the compensation benefit schedule with respect to an on-the-job injury of the deceased worker. As noted above, the dependent child was barred by the workers' compensation exclusivity provision from pursuing a civil action. 259 Or at 170. *See also Bigby v. Pelican Bay Lbr. Co., supra*, 173 Or at 692 (beneficiary omitted from compensation schedule could obtain nothing under Workers' Compensation Law, but still was barred from bringing a civil action). More recently, in *Hathaway v. Health Future Enterprises*, 320 Or 383, 386-87, 884 P2d 549 (1994), and *Nicholson v. Salem Area Transit*, 320 Or 391, 395, 884 P2d 864 (1994), this court recognized that "palliative care" is not compensable even though a worker has suffered a compensable injury for which the palliative care is given.

The foregoing cases, which span the whole history of workers' compensation in Oregon, show that this court has recognized that workers' compensation is the exclusive remedy available to workers covered under the Workers' Compensation Law for accidental injuries that arise in the course and scope of their employment, while at the same time recognizing that not all compensable injuries result in an award of compensation. The majority focuses on the words "liability" and "other liability" in ORS 656.018(1)(a), asserting that they imply "that there must exist, as a predicate for that freedom [from civil suit on the part of the employer], some actual liability under the Workers' Compensation Law." 320 Or at 518. The majority errs in that analysis. The term "liability" does not necessarily mean responsibility to pay money; it may refer to liability *to defend* against an action or claim, whether or not the employer ultimately is obliged to pay. There are two reasons why the latter reading, rather than the majority's reading, is the applicable one. First, the

context suggests it. ORS 656.018(2) contains a provision parallel to ORS 656.018(1)(a), which limits the worker to act under the workers' compensation system for compensable injuries; "the right * * * to bring suit against the employer," not an obligation to pay money, is the core concern. Second, this court's prior cases — which are part of the statute — uniformly have interpreted ORS 656.018 in a manner that is at odds with the majority's interpretation.

To use a metaphor: the land of workers' compensation benefits that actually are available has never abutted the land of permissible civil actions. Between those lands has flowed a river of "compensable injuries" for which no benefits are available *and* for which no civil action may be brought. That river is formed by the three streams described above (intrinsic reasons why a compensable injury results in no compensation, extrinsic reasons for that result, and statutory limits on the nature of benefits payable). Today the majority makes a radical departure from those established principles.

The majority bases that departure on the 1990 amendments to ORS 656.005(7)(a), when the legislature amended the definition of "compensable injury" to include the "major contributing cause" "limitations" contained in ORS 656.005(7)(a)(A) and (B). The majority concludes that the 1990 amendments narrowed the definition of "compensable injury" and "so also the exclusivity provision narrowed." 320 Or at 523. But the 1990 amendments did not narrow the exclusivity provision.

Before 1990, the Workers' Compensation Law applied to all accidental injuries "arising out of and in the course of employment." The current definition of "compensable injury" likewise encompasses all accidental injuries "arising out of and in the course of employment." Accordingly, what is covered by the concept of "compensable injury" has not changed. The only thing that has changed is how much causation a worker needs to show to receive compensation for certain compensable injuries. A worker must now show that the compensable injury is the "major contributing cause" of the consequential condition, disability, or need for treatment in certain circumstances. Before 1990, there was no such statutory requirement. Thus, the 1990 change was a

change of degree, not a change of coverage of the Workers' Compensation Law.

To return to the earlier metaphor, the legislature can change the boundary line and create, for the first time, contiguity between the land of workers' compensation benefits that actually are available and the land of permissible civil actions. The legislature also can narrow or widen the river that now exists between those lands — the river of compensable injuries for which no benefits are available and for which no civil action may be brought (subject only to constitutional limitations, which, as noted below, are not at issue in this case). The question before us is which of those changes the 1990 amendment to ORS 656.005(7)(a) wrought. In my view, ORS 656.005(7)(a) plainly constitutes a slight widening of the river.

As the discussion above shows, the text and context of the Workers' Compensation Law (including this court's prior interpretations and the historical development of the statutes) make clear the definition of "compensable injury" contained in ORS 656.005(7)(a) and applied to ORS 656.018 and the legislative intent behind those provisions. Thus, the court's inquiry should stop here. *See PGE*, 317 Or at 611 (explaining methodology).

The majority finds ambiguity in the statute where there is none, by confusing "compensable injuries" with "compensation" and by ignoring the difference between ORS 656.005(7)(a) and (b). Because of the alleged ambiguity, the majority then proceeds to analyze the legislative history of the 1990 amendments to the definition of "compensable injury," ORS 656.005(7)(a). From that scant legislative history, the majority concludes that plaintiff's claim is not a "compensable injury" under the definition provided in ORS 656.005(7)(a) and, therefore, that the exclusivity provision does not apply. The majority thus concludes that the legislature made a geologic change that eliminated the river of compensable injuries for which no benefits are available and for which no civil action may be brought.

Assuming that the statutes are ambiguous and that an inquiry into legislative history is called for, the material on which the majority relies does not support its drastic result.

First, the legislative history of the 1990 amendment to ORS 656.005(7)(a) is not clear. Conflicting testimony before the Joint Special Committee on Workers' Compensation and statements on the House floor concerning how federal courts have interpreted *other* workers' compensation statutes does not provide a clear indicator of legislative intent. Further, the statement on the House floor by Representative Dwyer, quoted by the majority — that he was "inclined to agree" that the major-contributing-cause test *"may* subject * * * an employer[] to tort action" — does not resolve this ambiguity in legislative intent, but rather heightens it. 320 Or at 524 (emphasis added). His is not a statement of certitude; it is a statement of possibility.

In addition, there was no amendment to ORS 656.018 before the legislature. Most of the discussion quoted by the majority related to witnesses' and legislators' understanding of ORS 656.018. 320 Or at 521-24. To the extent that legislators were commenting on their understanding of that long-existing provision, their comments have no bearing on what ORS 656.018 meant. *See DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984) ("The views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting a law enacted by their predecessors.").

The majority also discusses the legislative history of ORS 656.005(7)(a) without giving effect to the legislative history of the whole package of interrelated 1990 amendments to the Workers' Compensation Law. The broader purposes of the 1990 amendments to the Workers' Compensation Law are revealed by the legislative history of the 1990 special session during which the legislature revised that law extensively. The underlying theme of all the 1990 amendments was to make the system more cost-effective for employers and more efficient. *See* Exhibit B, Interim Special Committee on Workers' Compensation, May 3, 1990 (letter from the Governor's Workers' Compensation Labor Management Advisory Committee to Governor Neil Goldschmidt proposing changes to Workers' Compensation system, requested by Governor Goldschmidt, to "control the costs of Oregon's workers' compensation program"); Exhibit P, Interim Special Committee on Workers' Compensation, May 3, 1990 (summary fiscal analysis provided by Legislative

Fiscal Office concerning "anticipated premium reductions" associated with the proposed changes); Exhibit F, Interim Special Committee on Workers' Compensation, May 7, 1990 (analysis provided by SAIF Corporation discussing cost savings under proposed changes); Testimony of Matt Hersee, Administrator, Workers' Compensation Division, Department of Insurance and Finance, Interim Special Committee on Workers' Compensation, May 7, 1990, Tape 26, Side A (discussing anticipated savings that will result from proposed changes). As the discussion below will demonstrate more fully, the majority's interpretation of ORS 656.005(7)(a) is at odds with that theme.[4]

To summarize, the 1990 legislative history itself is unclear. The majority errs by relying on it.

If the majority were correct in finding an ambiguity, then, the second step in statutory interpretation (legislative history) would not resolve such an ambiguity. The third level of analysis would be required, that is, the application of maxims of statutory construction. *See PGE*, 317 Or at 612 (describing methodology). The majority's result could not survive at that third level, because its reading of ORS 656.005(7)(a) violates the principle that a statute should not be construed to produce an unreasonable or absurd result. *See State v. Garcias*, 298 Or 152, 159, 690 P2d 497 (1984) (stating principle). As has already been mentioned, one of the chief objectives of the workers' compensation statutes is to reduce the litigation and social costs of having workers and employers fully litigate claims concerning workplace injuries. By adopting a workers' compensation system, the legislature hoped to reduce costs for all parties involved and find a comprehensive and efficient means of dealing with on-the-job injuries. *See* ORS 656.012(2)(d) (stating objectives of the

---

[4] This case presents an opportunity to make a general observation about the use of legislative history. Much of the majority's discussion concerns statements of two witnesses before a committee and of two legislators. Much of the dissent's discussion concerns the manifest general intention of the legislature in enacting the 1990 amendments to the workers' compensation laws. In general, an examination of legislative history is most useful when it is able to uncover the manifest general legislative intent behind an enactment. By contrast, an examination of legislative history is most fraught with the potential for misconstruction, misattribution of the beliefs of a single legislator or witness to the body as a whole, or abuse in the form of "padding the record" when the views of only a small number of persons on a narrow question can be found.

Workers' Compensation Law); *see also Bigby*, 173 Or at 692 (stating purposes of pre-1965 version of Workers' Compensation Law). The position taken by the majority seriously undermines that objective by making the overall incentives of the workers' compensation system topsy-turvy and irrational.

After today, an injured worker will seek to pursue a worker's compensation claim as limply as possible, so as to achieve the goal of having the Workers' Compensation Board declare the claim noncompensable.[5] Once noncompensability is determined, the worker can then bring a civil action against the employer and avoid the exclusivity provision altogether. By creating a system in which workers have an incentive to pursue litigation to acquire damages for work-related injuries, the majority jeopardizes the receipt of "prompt" medical treatment and the assurance of income benefits (contrary to the policies set out in ORS 656.012(2)(a), (c)) and increases litigation (contrary to the policy set out in ORS 656.012(b)). Indeed, the more serious the worker's condition, the greater the incentive to pursue a civil claim and the greater the trespass on the legislatively stated policies.

The implications of today's decision for employers and their insurers are equally peculiar. The employer, who now has the incentive to resist workers' compensation claims, will take up the position presently occupied by the injured worker, that is, attempting to have the claim declared compensable, so as to retain the protection of ORS 656.018. The workers' compensation insurance carrier, who now has the same incentive as the employer to resist claims, will be opposed to the employer's interest and will instead have the same goal as the worker, to have the claim declared noncompensable, so the insurer will not have to pay the claim — unless the same carrier also happens to cover the employer for general liability insurance.

Self-insured employers will pay non-meritorious claims to eliminate the risk of civil actions, and insured employers will encourage their insurers to do the same. That

---

[5] The majority blithely assumes, by way of a footnote, 320 Or at 525 n 7, that an injured worker could not "elect to bypass the workers' compensation system," but fails to explain why not. For the purpose of this dissent, however, I accept the assumption.

practice, although costlier than present practices, would be a reasonable way to avoid even greater costs, and potential awards of damages, associated with litigation. The greater costs will be passed on to consumers, workers, and employers. The speedy, efficient, and cost-effective resolution of claims concerning on-the-job injuries, desired by the legislature, will become more difficult.

In short, the majority's reading of ORS 656.005(7)(a) undercuts the *raison d'etre* of the workers' compensation system. The workers' compensation system represents a legislatively mandated "bargain" between employers and workers. The system gives workers the opportunity to seek compensation for work-related injuries and diseases without the need to prove fault on the employer's part; in exchange, workers give up the right to sue the employer for work-related injuries and diseases. Workers benefit from the security of knowing that, if they prove their claims, they will be compensated quickly; employers benefit from limited liability and reduced litigation costs. That bargain is implicit in the policy statement accompanying the Workers' Compensation Law, ORS 656.012, and has been recognized by this court.

In *Hale v. Port of Portland*, 308 Or 508, 521-22, 783 P2d 506 (1989), this court described the bargain this way:

"[T]he Oregon legislature * * * eliminated the haphazard system of liability of employers to some employees for some injuries occurring under a limited number of circumstances, and replaced it with a system that made employers liable for the medical expenses of their injured workers without regard to fault. The scheme penalized some members of both camps — those plaintiffs who could prove actionable negligence of their employers, and so obtain damages beyond their medical expenses, and those employers who could defeat liability either because they had not been negligent or because they could show the worker was guilty of contributory negligence or assumption of the risk."

See also *McGarrah v. SAIF*, 296 Or 145, 160-61, 675 P2d 159 (1983) ("In exchange for * * * relief under this no-fault recovery system, employes are limited to a fixed schedule of recovery and must abandon any common law right of action against their employers.")

The overall bargain suggests that the employer is not civilly liable for on-the-job activities and conditions if the employer provides the required workers' compensation coverage and if those activities and conditions fall short of being willful and unprovoked aggression. *See* ORS 656.018(3) (exemption from liability does not apply when injury caused by willful and unprovoked aggression of person otherwise exempt). The majority's interpretation of the statutory definition of "compensable injury," however, guts the bargain. Every claimant will have the opportunity and the incentive to try to "opt out" of the workers' compensation system. The legislature did not intend that result.

Under a proper reading of ORS 656.005(7)(a), plaintiff has a compensable injury, because he has an "injury * * * arising out of and in the course of employment." The Board found that plaintiff has "transient irritation of the upper respiratory tract and paranasal sinuses *as a result of inhalation of substances found in his work place.*" (Emphasis added.) The Board then held that "[t]he medical evidence, however, does not support the conclusion that [plaintiff] has a compensable disease," because "[h]is symptomatic response to irritants is not a pathological process." In other words, although plaintiff's injury arose out of and in the course of his employment (was a compensable injury), the evidence adduced at the hearing did not entitle plaintiff to collect benefits.[6]

Whether or not plaintiff received benefits, defendant's asserted liability here "arise[es] out of compensable injuries" and, therefore, the workers' compensation system

---

[6] Plaintiff argues that such a result would be contrary to Article I, section 10, of the Oregon Constitution, which provides in part that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Plaintiff did not preserve that argument below; therefore, this court should not consider it. *See Leiser v. Sparkman*, 281 Or 119, 122, 573 P2d 1247 (1978) ("The parties to an appeal are restricted to the theory upon which [the case was tried] in the court below.").

I would note, however, that the workers' compensation scheme has withstood Article I, section 10, challenges since *Evanhoff v. State Industrial Acc. Com.*, 78 Or 503, 517-18, 154 P 106 (1915). Recently, in *Hale v. Port of Portland*, 308 Or 508, 523, 783 P2d 506 (1989), this court again stated that, so long as the party injured is not left without a remedy, Article I, section 10, is not violated. As discussed above, plaintiff is not left without a remedy. Plaintiff has a remedy, because he had an opportunity to prove that his condition was compensable; he has simply failed to prove his case.

"is exclusive and in place of all other liability." ORS 656.018(1). Plaintiff thus is foreclosed, under ORS 656.018(2), from pursuing the present action. Accordingly, the decision of the Court of Appeals and the judgment of the circuit court should be affirmed.

For the foregoing reasons, I respectfully dissent.

Carson, C. J., joins in this opinion.